2020-1992

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## In re: VIVINT, INC.
*Appellant*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. 90/020,115

## BRIEF FOR APPELLEE,
Director of the United States Patent and Trademark Office

THOMAS W. KRAUSE
Solicitor

FARHEENA Y. RASHEED
Deputy Solicitor

ROBERT J. MCMANUS
MAUREEN D. QUELER
Associate Solicitors

U.S. Patent and Trademark Office
Office of the Solicitor
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

*Attorneys for the Director of the
U.S. Patent and Trademark Office*

February 22, 2021

## Representative Claim

1.      A method of monitoring and controlling remote equipment, comprising the steps of:

> a) determining a state of at least one parameter of at least one piece of the remote equipment;
> b) communicating a message indicative of the state from the piece of remote equipment to a computer server as an incoming message;
> c) enabling a user to remotely configure or modify a user-defined message profile containing outgoing message routing instructions, the user-defined message profile being storable on the computer server;
> d) enabling a user to remotely send command messages to the remote equipment via the computer server to remotely control the remote equipment;
> e) determining whether an incoming message is an incoming exception message indicative of improper operation of the piece of remote equipment;
> f) if it is determined in step e) that an incoming message is an incoming exception message, forwarding at least one outgoing exception message based on the incoming message to at least one user-defined communication device specifiable in the user-defined message profile, wherein the user can remotely configure or modify the user-defined message profile by remotely accessing the computer server.

Appx3; Appx60.

# TABLE OF CONTENTS

I.     Statement of the Issues ................................................................. 1

II.    Statement of the Case .................................................................. 4

    A.     Legal Background ................................................................ 4

        1.     Discretion in the institution of an AIA trial ..................... 4

        2.     Discretion in ordering an ex parte reexamination ............. 7

    B.     The USPTO Ordered Reexamination under § 304 ................. 8

        1.     Patentability issues in original examination ...................... 8

        2.     Patentability issues in prior IPR petitions ........................ 9

        3.     The Examiner's reexamination order ............................... 12

    C.     The reexamination finally determined that claims 1-21 of the '513 patent are unpatentable based on a proper SNQ ............. 13

        1.     The Board rejected Vivint's challenge that no "substantial new question of patentability" under § 303 exists ........................................................................... 13

        2.     The USPTO rejected Vivint's petitions seeking termination of the reexamination under the second sentence of 35 U.S.C. § 325(d). ....................................... 14

III.   Summary of the Argument ........................................................... 20

IV.    Argument ................................................................................... 22

    A.     Standard of Review ............................................................. 22

    B.     The Board Correctly Determined that the Board's Discretionary Denial in the '1091IPR Did Not Preclude a Finding of a Substantial New Question of Patentability Here ................. 24

    C.     The USPTO's Application of § 325(d) Is Not Reviewable, and Was Not an Abuse of Discretion In Any Event ......................... 30

1.       The Director's wholly discretionary determination under § 325(d) is not judicially reviewable ................................................... 31

2.       Vivint's Argument That the USPTO Had Inherent Authority to Terminate the Reexamination Goes Nowhere ............................................................................. 33

3.       Vivint fails to demonstrate that the USPTO abused its discretion in declining to terminate the reexamination ................. 36

        a.    Vivint misconstrues the Board decision denying institution in the '1091 IPR ....................................................... 36

        b.    Differences in the IPR and ex parte reexamination statute permit different applications of the discretionary provision at § 325(d) ........................................ 42

D.     Vivint's Appointments Clause and APA Arguments Are Waived and Foreclosed by Precedent ............................................. 47

1.       Vivint's *Arthrex* arguments are waived and already judicially resolved .................................................................. 47

2.       Vivint's APA-based arguments are waived and lack merit in any event ...................................................................... 50

V.    Conclusion ............................................................................................. 52

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Advanced Bionics, LLC v. Med-El Elektromedizinische Geräte GmbH,*
  IPR2019-01469, 2020 WL 740292 (PTAB Feb. 13, 2020) .........................6, 38, 39, 40

*Alarm.com Inc. v. Vivint, Inc.,*
  IPR2015-01997 ........................................................................................................9

*Alarm.com Inc. v. Vivint, Inc.,*
  IPR2016-00129 ........................................................................................................9

*Alarm.com Inc. v. Vivint, Inc.,*
  IPR2016-01091 ................................................................................................*passim*

*Almond Bros. Lumber Co. v. United States,*
  721 F.3d 1320 (Fed. Cir. 2013) ...................................................................... 31, 32

*Apple, Inc. v. Maxell, Ltd.,*
  Appeal Nos. 2020-2132, -2211, -2212, -2213, 21-1033 ..............................33

*Ariosa Diagnostics, Inc. v. Illumina, Inc.,*
  IPR2014-01093 ......................................................................................................34

*Ariosa Diagnostics v. Verinata Health, Inc.,*
  IPR2013-00276 ......................................................................................................34

*Arthrex, Inc. v. Smith & Nephew, Inc.,*
  Appeal No. 2018-2140, 2019 WL 1236583 (Mar. 12, 2019) .......................50

*Arthrex, Inc. v. Smith & Nephew, Inc.,*
  941 F.3d 1320 (Fed. Cir. 2019) ...................................................................... 48, 50

*Arthrex, Inc. v. Smith & Nephew, Inc.,*
  953 F.3d 760 (Fed. Cir. 2020) ...........................................................................50

*Becton Dickinson & Co. v. B. Braun Melsungen AG,*
  IPR2017-01586, 2017 WL 6405100 (PTAB Dec. 15, 2017) ...................6, 19, 38, 39

*Caterpillar Paving Products Inc. v. Wirtgen America, Inc.,*
  957 F.3d 1342 (Fed. Cir. 2020) ...........................................................................49

*Celgene Corp. v. Peter*,
  931 F.3d 1342 (Fed. Cir. 2019) ........................................................................23

*Ceridian Corp. v. NLRB*,
  435 F.3d 352 (D.C. Cir. 2006) ........................................................................23

*In re Cree, Inc.*,
  818 F.3d 694 (Fed. Cir. 2016) ........................................................................23

*In re DBC*,
  545 F.3d 1373 (Fed. Cir. 2008) ........................................................................48

*Demko v. United States*,
  216 F.3d 1049 (Fed. Cir. 2000) ........................................................................24

*In re Etter*,
  756 F.2d 852 (Fed. Cir. 1985) ........................................................................44

*In re Gartside*,
  203 F.3d 1305 (Fed. Cir. 2000) ........................................................................23

*General Plastic Industrial Co., Ltd. v. Canon Kabushiki Kaisha*,
  IPR2016-01357, 2017 WL 3917706 (PTAB Sept. 6, 2017) .................................*passim*

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ........................................................................32

*INS v. Yang*,
  519 U.S. 26 (1996) ........................................................................33

*Kalaris v. Donovan*,
  697 F.2d 376 (D.C. Cir. 1983) ........................................................................51

*Kennametal, Inc. v. Ingersoll Cutting Tool Co.*,
  780 F.3d 1376 (Fed. Cir. 2015) ........................................................................22

*Lucia v. S.E.C.*,
  138 S. Ct. 2044 (2018) ........................................................................48

*Mach Mining, LLC v. E.E.O.C.*,
  575 U.S. 480 (2015) ........................................................................31

*Oticon Medical AB et al. v. Cochlear, Ltd.*,
  IPR2019-00975, 2019 WL 5237817 (PTAB Oct. 16, 2019) ........................................38

*Palo Alto Networks v. Finjan,*
    IPR2015-01999 ........................................................................... 38

*Polaris Innovations Ltd. v. Kingston Tech. Co.,*
    792 F. App'x 819 (Fed. Cir. 2020) ........................................... 49

*Polaris Innovations Ltd. v. Kingston Tech. Co.,*
    792 F. App'x 820 (Fed. Cir. 2020) ........................................... 48

*Rastelli v. Warden, Metro. Correctional Center,*
    782 F.2d 17 (2d Cir. 1986) ........................................................ 32

*In re Recreative Techs. Corp.,*
    83 F.3d 1394 (Fed. Cir. 1996) ............................................ 29, 30

*Redline Detection, LLC v. Star Envirotech, Inc.,*
    811 F.3d 435 (Fed. Cir. 2015) ............................................ 23, 24

*Ryder v. United States,*
    515 U.S. 177 (1995) .................................................................... 48

*SAS Institute v. Iancu,*
    138 S. Ct. 1348 (2018) ........................................................ 32, 45

*Seila Law LLC v. CFPB,*
    140 S. Ct. 2183 (2020) ............................................................... 51

*In re Swanson,*
    540 F.3d 1368 (Fed. Cir. 2008) ........................... 22, 28, 29, 30

*Tokyo Kikai Seisakusho, Ltd. v. United States,*
    529 F.3d 1352 (Fed. Cir. 2008) ............................................... 34

*United States v. Arthrex, Inc.,*
    No. 19-1434 ................................................................................ 51

*In re Watts,*
    354 F.3d 1362 (Fed. Cir. 2004) ............................................... 22

*Webster v. Doe,*
    486 U.S. 592 (1988) .................................................................... 31

*Woodford v. Ngo,*
    548 U.S. 81 (2006) ...................................................................... 47

**Statutes**

5 U.S.C. § 701(a)(2) ...................................................................................31

35 U.S.C. § 6 ................................................................................... 22, 50

35 U.S.C. §§ 302–307 ..................................................................................7

35 U.S.C. § 303(a) ............................................................................ 7, 24, 44

35 U.S.C. § 304 .................................................................................... 7, 44

35 U.S.C. § 305 .........................................................................................37

35 U.S.C. § 314(a) ..................................................................... 4, 5, 36, 44

35 U.S.C. § 316(a)(11) ..............................................................................36

35 U.S.C. § 325(d) ...........................................................................*passim*

**Regulations**

37 C.F.R. § 1.540 .......................................................................................35

37 C.F.R. § 42.108 .....................................................................................36

**Other Authorities**

H.R. Rep. No. 96-1307 ..............................................................................28

MPEP § 2225 .............................................................................................35

MPEP § 2242 ..................................................................................*passim*

MPEP § 2286.01 ........................................................................................34

Patent Trial and Appeal Board Consolidated Trial Practice Guide
    (Nov. 2019) ..........................................................................................7

Public Law 107-273,
    116 Stat. 1758 (2002) .........................................................................28

## STATEMENT OF RELATED CASES

Beyond the cases identified in Vivint's opening brief (ECF No. 14), the

Director is not aware of any other appeal in connection with the patent at issue in this

case that has previously been before this Court or any other related cases pending in

this or any other court that will directly affect, or be directly affected by, this Court's

decision in this appeal.

# I.  STATEMENT OF THE ISSUES

This appeal arises from ex parte reexamination of claims 1-21 of Vivint's '513 patent. The Examiner rejected, and the Board affirmed, that claims 1-21 are unpatentable under 35 U.S.C. § 103. Vivint does not challenge the patentability determination on appeal. Vivint challenges only whether the reexamination should have occurred at all.

The Examiner found that the obviousness issues raised by the underlying reexamination request met the substantial new question of patentability ("SNQ") standard. The Examiner explained that three of the relevant references (Shetty, Cheng, and Garton) were never presented during original examination, and the fourth (Joao) was cited on an IDS but never discussed. The Examiner further observed that the request raised significant patentability questions never previously evaluated by the USPTO or a federal court. The Examiner explained that while an earlier IPR petition filed against the '513 patent (IPR2016-01091, or "'1091IPR") contained some of the same art and obviousness issues raised by the reexamination request, the Board there did not consider the merits or decide any question of patentability when it declined to institute the IPR on discretionary grounds. In upholding the Examiner's final rejection of all of the claims, the Board specifically found that the Examiner did not err in determining that the reexamination request raised an SNQ rejecting over Vivint's assertion that the issues were not "new" because they had been raised in the non-instituted '1091IPR petition. Citing MPEP § 2242(I), the Board explained that the

1

earlier discretionary decision not to institute on the '1091IPR petition did not evaluate the merits of the patentability issues and thus was not a "review" of the '513 patent.

In a separate set of petition decisions, the USPTO rejected Vivint's closely related argument that the ordered reexamination should be terminated under the second sentence of 35 U.S.C. § 325(d) (enacted in the AIA), which gives the Director the discretion to reject any request for ex parte reexamination the basis that "the same or substantially the same prior art or arguments previously were presented to the Office." The USPTO interpreted the relevant provision at § 325(d) as not authorizing the USPTO to terminate an ordered reexamination. More importantly, the basis for the relief sought—that the Board had denied institution in the '1091IPR based on § 325(d)—was not correct because the denial there was not based on the determination that the "same or similar" art or arguments had been previously presented as required by § 325(d). Finally, the USPTO maintained that even if the Board exercised its discretion to deny review in the AIA context under § 325(d), it was not an abuse of discretion to maintain the reexamination because the statutory and policy differences between the two proceedings afford different discretionary determinations under § 325(d).

Thus, the main issues on appeal are:

1.    Whether Vivint has demonstrated that the Board erred by determining that a reexamination request raising patentability questions never evaluated or decided

on their merits by the USPTO or a federal court raises "new" questions of patentability;

2.      Whether this Court has jurisdiction to review Vivint's arguments based on the wholly discretionary provision at 35 U.S.C. § 325(d);

3.      Whether, assuming the exercise of discretion under § 325(d) is reviewable, Vivint has demonstrated that the Director abused that discretion in failing to terminate the reexamination;

4.      Vivint also raises various constitutional challenges to preserve the questions for any further review by the Supreme Court. Vivint waived its ability to "preserve" arguments by waiting to raise them in the first instance here. And as Vivint acknowledges, its arguments are foreclosed by binding precedent. Specifically, Vivint argues (1) that this Court's decision in *Arthrex* did not cure the alleged defect in the appointments of the PTAB's APJs, an argument foreclosed by both *Arthrex* itself and *Caterpillar*; and (2) that if the *Arthrex* panel's remedy of removing APJs' tenure protections were to remain intact, it creates a statutory problem under the Administrative Procedure Act , which (according to Vivint) requires, administrative law judges to have certain tenure protections under 5 U.S.C. § 7521, an argument foreclosed by this Court's precedent in *Arthrex*.

## II.     STATEMENT OF THE CASE

This appeal arises from a Board decision affirming the rejection of reexamined claims of U.S. Patent 6,717,513 ("the '513 patent"). Appx1-26. The Examiner rejected claims 1-21 of the '513 patent under 35 U.S.C. § 103(a). The Board affirmed those rejections and this appeal by Patent Owner Vivint, Inc. ("Vivint") followed. Vivint does not appeal the merits of the USPTO's patentability determinations, instead focusing on whether the reexamination should have started at all.

### A.     Legal Background

Vivint's appeal concerns the issue of discretion when instituting an AIA trial, and when ordering an ex parte reexamination.

#### 1.     Discretion in the institution of an AIA trial

Even in cases where a petitioner has satisfied the institution standard for inter partes or post-grant review, the statutes, including 35 U.S.C. 314(a) and 324(a), provide the Director with discretion to deny an AIA petition. *See, e.g.,* 35 U.S.C. 314(a) ("The Director may not authorize an inter partes review to be instituted unless . . ."). To achieve the appropriate balance envisioned by Congress in §§ 314(a) and 324(a), the USPTO has set forth a number of non-exclusive factors the Office takes into account when exercising that discretion, especially as to petitions challenging the same patent as challenged previously. *See, e.g., General Plastic Industrial Co., Ltd.* v. *Canon Kabushiki Kaisha,* IPR2016-01357, 2017 WL 3917706, at *7 (PTAB Sept. 6, 2017) (precedential) (providing a nonexclusive list of factors that the Board considers when

4

evaluating discretionary denial of follow-on petitions, also known as "serial" petitions,

under 35 U.S.C. 314(a)). The § 314 discretionary factors include:

1.  whether the same petitioner previously filed a petition directed to the same claims of the same patent;

2.   whether at the time of filing of the first petition the petitioner knew of the prior art asserted in the second petition or should have known of it;

3.  whether at the time of filing of the second petition the petitioner already received the patent owner's preliminary response to the first petition or received the Board's decision on whether to institute review in the first petition;

4.  the length of time that elapsed between the time the petitioner learned of the prior art asserted in the second petition and the filing of the second petition;

5.  whether the petitioner provides adequate explanation for the time elapsed between the filings of multiple petitions directed to the same claims of the same patent;

6.  the finite resources of the Board; and

7.  the requirement under 35 U.S.C. § 316(a)(11) to issue a final determination not later than 1 year after the date on which the Director notices institution of review.

*Id.*

Congress also provided the USPTO separate discretionary authority in assessing whether to institute AIA trials, based on duplicative challenges to issued patents. The second sentence of section 325(d) gives the USPTO discretion to deny trial institution if "the same or substantially the same prior art or arguments previously were presented to the Office." Similar to the case-specific analysis the agency has developed in exercising its discretion under § 314(a), the agency has developed a fact-dependent framework for evaluating whether to exercise institution discretion on the basis of § 325(d) (second sentence) in AIA trials.

In AIA trials, the Board uses the following two-part framework: (1) determining whether the same or substantially the same art previously was presented to the Office or whether the same or substantially the same arguments previously were presented to the Office; and (2) if either condition of the first part of the framework is satisfied, determining whether the petitioner has demonstrated that the Office erred in a manner material to the patentability of challenged claims. *Advanced Bionics, LLC v. Med-El Elektromedizinische Geräte GmbH*, IPR2019-01469, 2020 WL 740292, at *3 (PTAB Feb. 13, 2020) (precedential). In applying the two-part framework, the Board has considered certain non-exclusive factors. *See id.* at *3-4; *Becton Dickinson & Co. v. B. Braun Melsungen AG*, IPR2017-01586, 2017 WL 6405100, at *6 (PTAB Dec. 15, 2017) (precedential in relevant part). The *Becton, Dickinson* non-exclusive factors include:

1. the similarities and material differences between the asserted art and the prior art involved during examination;
2. the cumulative nature of the asserted art and the prior art evaluated during examination;
3. the extent to which the asserted art was evaluated during examination;
4. the extent of the overlap between the arguments made during examination and the manner in which a petitioner relies on the prior art or a patent owner distinguishes the prior art;
5. whether a petitioner has pointed out sufficiently how the Office erred in evaluating the asserted prior art; and
6. the extent to which additional evidence and facts presented in the petition warrant reconsideration of the prior art or arguments.

*Id.*

6

## 2.    Discretion in ordering an ex parte reexamination

35 U.S.C. § 303(a) provides that once a request for ex parte reexamination has been filed, "the Director will determine" whether the request raises "a substantial new question of patentability" regarding "any claim of the patent." In turn, 35 U.S.C. § 304 provides that if a substantial new question of patentability is determined to exist, reexamination will be ordered "for resolution of the question."

The discretionary power provided to the Director at, *e.g.*, 35 U.S.C. § 314(a) in deciding whether to institute an IPR, does not apply to ordering an ex parte reexamination. However, Congress made the second sentence of § 325(d) applicable to both AIA proceedings, as well as proceedings under chapter 30, which includes ex parte reexamination. *See* 35 U.S.C. §§ 302–307. The Office has not developed a framework for considering the discretionary provisions at § 325(d) (second sentence) when ordering a reexamination. *See* MPEP § 2242. As explained in the Patent Trial Practice Guide, the enumerated factors articulated in, *e.g.*, *Becton, Dickinson*, are considered when determining whether to institute an AIA trial, but "[a]n *ex parte* reexamination proceeding is not a trial proceeding, and the considerations with respect to issues involving 35 U.S.C. § 325(d) may differ due to the different nature of an *ex parte* reexamination proceeding." *See* Patent Trial and Appeal Board Consolidated Trial Practice Guide (Nov. 2019) ("CTPG"), at 63, available at https://www.uspto.gov/TrialPracticeGuideConsolidated.

7

**B.  The USPTO Ordered Reexamination under § 304**

As relevant to Vivint's appeal issue, on August 2, 2017, Alarm.com filed the underlying ex parte reexamination request ("Request"). The Request identified four obviousness questions for reexamination:

| Claim(s) | References |
|----------|------------|
| 1-13, 15-21 | Shetty and Joao |
| 14 | Shetty, Joao, and Cheng |
| 8-13, 15-21 | Shetty, Joao, and Garton |
| 14 | Shetty, Joao, Cheng, and Garton |

Appx70. The Request discussed whether the references were previously presented to the USPTO and, if so, how they had been used and whether they had been considered on their merits. *See* Appx65-74; Appx78-82.

### 1.  Patentability issues in original examination

Shetty, Cheng, and Garton were not cited or considered during original examination. *See* Appx69; Appx81-82. Joao was identified in an IDS but never discussed or cited by the original examiner. *See* Appx81. Indeed, the only rejection applied during original examination leading to the '513 patent was an obviousness-type double-patenting rejection based on Vivint's U.S. Patent No. 6,147,601, which Vivint overcame with a terminal disclaimer. *See* Appx980; Appx79-81. The '513 patent issued on Apr. 6, 2004, and expired on November 2, 2019. *See* Appx13585.

### 2.    Patentability issues in prior IPR petitions

The Request identified three prior petitions for inter partes review of the '513 patent filed by Alarm.com: IPR2015-01997, IPR2016-00129, and IPR2016-01091. *See* Appx71-74. The Request explained that "[a]ll [IPR petitions] were denied institution by the PTAB and thus do not preclude Alarm.com from filing this Request." Appx71.

The Board denied institution in the '1997IPR, based on its finding that the Scadaware reference—which was the basis for the three asserted grounds there—did not teach all the claim elements for which it had been offered. *See* Appx71; *Alarm.com Inc. v. Vivint, Inc.*, IPR2015-01997, Paper 14, at 19-34 (Apr. 7, 2016). While the same Garton reference as in the reexamination request was identified in combination with Scadaware with respect to claims 8-21, the Board did not substantively address Garton in its '1997IPR institution denial decision (and Vivint does not assert that it did). *See id.* at 33-34.

In the '0129IPR, the Board denied institution based on its determination that Alarm.com had failed to demonstrate that the Johnson reference qualified as prior art. *See* Appx71-72; *Alarm.com Inc. v. Vivint, Inc.*, IPR2016-00129, Paper 13, at 14-17 (PTAB May 3, 2016). While the same Joao reference as in the reexamination request was relied upon for two of the proffered grounds in the '129IPR, it was used differently and the Board did not substantively assess it in the institution denial decision (and Vivint does not assert that it did). *See id.* at 17; Appx72.

The '1091IPR petition—the IPR petition Vivint focuses on in this appeal—

relied upon the same Shetty, Joao, and Garton references for the same claims as the subject reexamination request. Appx72; *Alarm.com Inc. v. Vivint, Inc.*, IPR2016-01091, Paper 11, at 11-12 (PTAB Nov. 23, 2016) ("'1091IPR Dec.")[1]. The Board denied institution in the '1091IPR based on the discretion afforded under 35 U.S.C. § 314, examining eight factors:

(1) the finite resources of the Board;

(2) the requirement under 35 U.S.C. § 316(a)(11) to issue a final determination not later than one year after the date on which the Director notices institution of review;

(3) whether the same petitioner previously filed a petition directed to the same claims of the same patent;

(4) whether, at the time of filing of the earlier petition, the petitioner knew of the prior art asserted in the later petition or should have known of it;

(5) whether, at the time of filing of the later petition, the petitioner already received the patent owner's preliminary response to the earlier petition or received the Board's decision on whether to institute review in the earlier petition;

(6) the length of time that elapsed between the time the petitioner learned of the prior art asserted in the later petition and the filing of the later petition;

(7) whether the petitioner provides adequate explanation for the time elapsed between the filing dates of multiple petitions directed to the same claims of the same patent; and

(8) whether the same or substantially the same prior art or arguments previously were presented to the Office.

---

[1] The Director has attached the '1091IPR institution decision as an addendum to this brief.

'1091IPR Dec. at 5-7; *see id.* at 14. The Board explained that "[t]hese factors guide our decision to exercise discretion, but all factors need not be present, and we not need give equal weight to each factor in reaching our decision." *Id.* at 7.

In assessing factors three and five, the Board relied on the fact that Alarm.com had previously filed the '1997IPR and '0129IPR petitions, and received decisions from the Board identifying deficiencies in those petitions. *Id.* at 8-10. Regarding factors four and six, the Board took issue with the fact that Alarm.com knew of the references raised in the '1091IPR petition at the time of filing the earlier petitions and lacked an adequate explanation for not raising them earlier. *Id.* at 9-11. On the seventh factor, the Board noted that Alarm.com did not explain its petition timing other than a desire to provide an improved petition using information gleaned from the earlier proceedings. *Id.* at 11. The Board addressed Vivint's contention that the '1091IPR presented the same art or arguments as previously presented to the Office (factor eight), but did not decide that issue. *Id.* at 11. Rather, as with factor seven, the Board emphasized that Alarm.com admittedly used information gleaned from prior decisions to prepare the '1091IPR petition. *Id.* at 11-12.

The number and timing of the petitions, the failure to raise the '1091IPR petition's references and arguments earlier, and the use of the earlier petition decisions as a roadmap proved fatal to instituting trial. The Board concluded that the '1091IPR petition was an example of "undesirable, incremental petitioning" under § 314, where a petitioner uses past prior IPR attempts to "bolster" its contentions using "prior

Board decisions as a roadmap to correct past deficiencies." *Id.* at 12. The Board concluded that Alarm.com's failure to bring these issues in the earlier IPR petitions supported discretionary denial because "the Board's resources would be more fairly expended on initial petitions, rather than on follow-on petitions, such as the Petition in this case." *Id.* at 13. In exercising its discretion under § 314 to deny trial institution, the Board did not address or decide the merits of the patentability issues raised in the '1091IPR petition.

### 3.     The Examiner's reexamination order

The Examiner, acting on behalf of the Director, ordered the reexamination. *See* Appx976-984. The Examiner found that the Request "raises a substantial new question of patentability with respect to claims 1-21" of the '513 patent (Appx978) and that reexamination was otherwise appropriate. *See* Appx981-983.

In particular, the Examiner found that "a reasonable examiner would consider evaluation of Shetty in view of Joao, Cheng, and/or Garton, important in determining the patentability of the claims." Appx982. Further, after noting details about original examination and past IPR petitions (*see* Appx980-981), the Examiner explored whether those proceedings had engaged the art or arguments raised by the Request. The Examiner explained that the "Shetty, Cheng, and Garton were not cited or discussed on the record." Appx982. The Examiner also found that while Joao was cited in an IDS, it was "not discussed on the [original examination] record." *Id.* The Examiner further observed that with the '1091IPR petition, the "PTAB did not make

12

a patentability determination with respect to [Shetty in view of Joao and/or Garton] and claims 1-21 of [the] '513 patent." Appx982; *see* Appx981 (noting that the Board in the '1091IPR "denied instituting trial" under its discretionary powers). The Examiner concluded that "the Shetty, Joao, and Garton references are now presented in a new light compared to the earlier examinations and proceedings in view of the material new argument and interpretation in the Request." Appx982 ("[T]he use of these references in this reexamination is proper. *See* MPEP 2242.").

### C. The reexamination finally determined that claims 1-21 of the '513 patent are unpatentable based on a proper SNQ

At the conclusion of the reexamination proceedings the Examiner determined that claims 1-21 are unpatentable under § 103 on various grounds based upon Shetty, Joao, Cheng, and Garton. Appx1-26. On appeal from the Examiner's final rejection, the Board affirmed. *Id.* Vivint does not argue that the USPTO erred in concluding its claims are unpatentable, arguing instead about whether the reexamination should have occurred. Thus, the Director focuses on the facts relevant to that appeal.

### 1. The Board rejected Vivint's challenge that no "substantial new question of patentability" under § 303 exists

The Board rejected Vivint's argument that "no substantial new question of patentability exists because the same question was previously presented to the Board" based on the institution denial in the '1091IPR. Appx23; *see* Appx23-24. The Board observed that an SNQ exists "'unless the same question of patentability has already

been ... decided in a final holding of invalidity by a federal court in a decision on the merits involving the claim after all appeals ... [or] decided in an earlier concluded examination or review of the patent by the Office.'" Appx23-24 (quoting MPEP § 2242(I)). "[T]he review of the patent in an earlier concluded trial by the Patent Trial and Appeal Board, such as a post-grant review, *inter partes* review, or covered business method review of the patent" satisfies that language. The Board held that the "Examiner did not err, and that a substantial new question of patentability exists" because there has not been "review of the patent in an earlier concluded trial by the [PTAB]." Appx24. The Board explained that "[t]he decision to deny inter partes review in IPR2016-01091 did not constitute a final holding of invalidity or a decision in an earlier concluded examination or review." *Id.*

> **2.    The USPTO rejected Vivint's petitions seeking termination of the reexamination under the second sentence of 35 U.S.C. § 325(d).**

After the Examiner ordered reexamination, Vivint filed a petition under 37 C.F.R. § 1.181 to terminate or vacate the proceeding pursuant to 35 U.S.C. § 325(d). *See* Appx1523-1537. Vivint based that relief on its position that the Board "has already denied review under 35 U.S.C. § 325(d) of the '513 patent over the art cited here." Appx1523; *see* Appx1532-1535 (reiterating the Board's discretionary analysis of the factors informing use of its discretion, but asserting that § 325 was applied as opposed to § 314).

The USPTO dismissed the petition. *See* Appx10841-10857 ("Dismissal Decision"). As an initial matter, the Office waived the prohibition against Vivint's premature filing to consider Vivint's § 325(d) issue. *See* Appx10845-10846 (discussing 37 C.F.R. § 1.540). On the merits, the Office took the position that the cited language in § 325(d) "clearly refer[s] to the determination whether to order a reexamination proceeding or whether to reject the request, which occurs prior to the order," and that § 325(d) thus does not provide discretion to terminate on ordered reexamination. Appx10846-10847; *see* 10856.

The Dismissal Decision further explained that § 325(d) permits "the Office to exercise its discretion and issue an order denying reexamination on the basis that the same or substantially the same prior art or arguments previously were presented to the Office, even if a substantial new question of patentability is determined to be raised by the request." Appx10847. The decision noted:

> In the present case, the Office reviewed the provisions of 35 U.S.C. 325(d) in addition to the provisions of all other applicable statutes when determining whether to order reexamination. The Office, in its discretion, determined not to reject the request under 35 U.S.C. 325(d). Instead, reexamination was ordered.

Appx10848.

The Dismissal Decision rejected Vivint's contention that the reexamination order conflicted with the discretionary denial in the '1091IPR. *See* Appx10848-10852. The USPTO explained that "[i]n the ['1091IPR], the PTAB denied review pursuant to its discretion under 35 U.S.C. 314(a), not 35 U.S.C. 325(d)." Appx10849 (noting that §

15

314 does not apply to ex parte reexamination). The Dismissal Decision pointed out that seven of the eight factors were specific to § 314, not § 325(d). *See id.* The USPTO directed Vivint to the precedential decision in *General Plastic Industrial Co., Ltd.* v. *Canon Kabushiki Kaisha,* IPR2016-01357, 2017 WL 3917706 (PTAB Sept. 6, 2017) (precedential), which confirmed that the first seven factors considered by the Board in the '1091IPR institution decision apply to discretionary determinations under § 314. *See* Appx10849-10852. Similarly, the Dismissal Decision demonstrated that the concerns animating the § 314 analysis—for example, the limited resources of the PTAB and IPR efficiency—do not apply to § 325(d). *See* Appx10851-10852. The Dismissal Decision further observed that the Board's discussion in the '1091IPR institution decision of the eighth factor (whether the same art was previously presented) considered whether the IPR petition "uses information gleaned from earlier PTAB decision to bolster its arguments," which is a factor relevant to § 314, not 325(d). Appx10851 (citing, e.g., the third § 314 factor regarding whether petitioner has received any response or decision had been received in prior petitions).

Lastly, the Dismissal Decision explained that differences between the statutory framework in the AIA and ex parte context mean that the § 325(d) analysis in the two are not identical and can result in different outcomes. *See* Appx10852-10855 (discussing differences in the statutes and purposes of the two proceedings underlying potentially different outcomes). Thus, the USPTO explained that "even if the PTAB's decision in the ['1091IPR] to deny *inter partes* review were considered to be solely due

16

to an analysis under 35 U.S.C. 325(d)," the determination "not to exercise § 325(d) discretion in the present *ex parte* reexamination is not inconsistent" with that AIA outcome. Appx10852-10853.

Vivint filed a second petition seeking termination under § 325(d). *See* S.Add.5-S.Add.18. Vivint reiterated its position that the Board denied trial in the '1091IPR based on § 325(d) and that determination mandated termination of the reexamination. *See* S.Add.6-9. Vivint argued that the USPTO can entertain its petition to vacate an ordered reexamination. *See* S.Add.10 (citing two reexamination decisions indicating a post-order petition is timely). Vivint also complained that it was prevented from pursuing a § 325(d) issue pre-order by USPTO regulations. *Id.*

Vivint pressed that even if § 325(d) precludes terminating an ordered reexamination, "the reexamination order was indeed ultra vires" under the APA as "irreconcilably inconsistent with [the] Board's denial of the ['1091IPR] petition under § 325(d)." S.Add.11. Vivint admitted that the Board denied institution under its § 314 discretion, but argued that the institution decision additionally determined that denial was appropriate under § 325(d). *See* S.Add.12. Vivint protested that the Board's IPR trial denial must control the reexamination, disputing the USPTO's position that § 325(d)'s application may permissibly differ in the two proceedings. *See* S.Add.13-16.

The USPTO denied and expunged Vivint's second petition on § 325(d). Appx12209-12219 ("Denial Decision"); *see* Appx12218 (explaining expungement). The USPTO reiterated its view that § 325(d) did not provide for terminating an

ordered reexamination, making Vivint's issue nonpetitionable. *See* Appx12210-12211. The denial decision rejected Vivint's argument that the petition must be permitted after the reexamination order because it is "impossible" to file one beforehand. *See* Appx12211-12213. In particular, the USPTO explained that parties may seek waiver of the rules generally prohibiting pre-order filing to raise issues like § 325(d). *See* Appx12212-12213 (noting that the USPTO waived 37 C.F.R. § 1.540 (second sentence) to consider Vivint's first petition). Further, a petition raising § 325(d) is not needed; "[o]nce a request for *ex parte* reexamination is granted a filing date, the Office reviews the request in view of all applicable statutes, including 35 U.S.C. 325(d), as a matter of standard procedure." Appx12212. Lastly, the USPTO reiterated that the two petition decisions cited by Vivint as permitting a post-order § 325(d) petition had been previously identified as erroneous in March, 2017, well before Vivint's 2018 improper first petition. *See* Appx12215 (citing Appx10846 n.1).

On the merits, the Denial Decision reiterated its reasoning that the language in § 325(d) provides for rejecting the request and does not permit terminating an ordered reexamination. *See* Appx12211. The Office further explained that "[t]he provisions of the last sentence of 35 U.S.C. 325(d) [to order reexamination], however, are discretionary, not mandatory." Appx12214 ("[A]ny exercise of the Office's authority to 'reject' the request pursuant to 35 U.S.C. 325(d) is <u>purely discretionary</u>."); Appx12217 ("The Office, however, is not *required* to reject the request under 35 U.S.C. 325(d), as explained previously in this decision."). The Denial Decision also

18

reiterated that the Board's discretionary denial in the '1091IPR was rooted in § 314, and that the discussion relied upon by Vivint for a § 325(d) determination discussed considerations (i.e., "the use of information gleaned from earlier PTAB decisions") not germane to § 325(d). Appx12215.

Lastly, the Denial Decision expanded on the Dismissal Decision's explanation that even if the '1091IPR institution had been based on § 325(d), the IPR decision did not control the § 325(d) analysis in this reexamination, as differences between the two proceedings "may result in a different outcome." Appx12215; *see* Appx12215-12217. The Denial Decision explained:

> In the present case, the Office declined to reject the request under 35 U.S.C. 325(d) in view of requester's specific arguments in the request with respect to the patentability each of the claims requested to be reexamined, i.e., claims 1-21 of the '513 patent, in view of each ground raised, which includes the Shetty, Joao, Garton, and Cheng references.

Appx12216; *see id.* (noting "standard procedure" in evaluating reexamination requests to determine whether "the teaching of a reference is cumulative to the prior art of record"). The Denial Decision observed that the Shetty, Joao, Garton, and Cheng references had never been "analyzed on the merits by the PTAB with respect to the claims requested to be reexamined." Appx12216; *see id.* n.13 (discussing related IPR petitions disposition). The Denial Decision noted that such an inquiry is consistent with typical PTAB practice under § 325(d). *See* Appx12217 (citing *Becton, Dickinson*, 2017 WL 6405100, at *8.

### III.    Summary of the Argument

Vivint does not contest that Claims 1-21 of the expired '513 patent are unpatentable. Vivint instead attempts to avoid that determination by arguing the USPTO was foreclosed from addressing those patentability questions in ex parte reexamination. Vivint's arguments should be rejected.

No forum has addressed the patentability questions posed by Alarm.com's reexamination request on their merits. The USPTO does not violate the "substantial new question of patentability" standard at § 303 when it engages patentability questions that the Office has never decided. Vivint's attempt to convert the Board's discretionary decision not to institute a trial in the '1091IPR petition into a bar against a "substantial new question of patentability" finds no footing in the reexamination statute, this Court's law, or USPTO guidance.

Vivint's alternative attempt to turn the '1091IPR institution denial into a mandatory estoppel under 35 U.S.C. § 325(d) (second sentence) and terminate an ordered reexamination similarly lacks merit. This Court lacks jurisdiction to review the Director's wholly discretionary decision not to reject the reexamination request under § 325(d). The absolute discretion of § 325(d)—a provision that neither requires any particular determination nor result—is an action "committed to agency discretion by law" under 5 U.S.C. § 701(a)(2) and not subject to judicial review.

If this Court can reach Vivint's § 325(d) argument, the premise of Vivint's argument is flawed. The USPTO correctly explained that the premise of Vivint's

argument—that the Board denied the '1091IPR based on § 325(d)—misunderstands the Board's discretionary denial in the '1091IPR. The Board denied institution in the '1091IPR based on its discretion under § 314(a) and the Office's factors for exploring whether the USPTO should permit a trial "follow-on" AIA petition. *See generally General Plastic*, 2017 WL 3917706. That is not a decision reflecting the language or policy of the entirely separate discretionary provisions at § 325(d) (second sentence). Vivint's rewriting of the Board decision on appeal does not change the nature of the Board's '1091IPR institution denial.

Even if the exercise of § 325(d) discretion is reviewable, and if Vivint is correct that the Board's discretionary denial in the '1091IPR was based on § 325(d), there would be no basis for terminating the reexamination. Nothing in § 325(d) can be read to require rejecting a reexamination request. The USPTO explained that key differences in the purpose and provisions for IPRs and ex parte reexaminations support administering the discretion provided at § 325(d) in different ways. This Court should reject Vivint's policy-based efforts to turn the wholly discretionary provisions at § 325(d) into a mandatory estoppel. Here, the USPTO correctly found the reexamination statute's threshold SNQ standard satisfied; the USPTO does not err by ordering and completing that statutorily permitted reexamination.

Vivint's Appointment Clause and APA arguments should likewise be rejected. Vivint acknowledges that this Court's precedent forecloses those arguments; Vivint merely raises the issue to preserve the challenge for further review. Vivint waived any

21

ability to preserve its arguments by affirmatively waiting to raise them to this Court for the first time. Moreover, in *Arthrex* and *Caterpillar*, this Court held that APJs were constitutionally appointed as of the date that this Court issued its decision in *Arthrex*. The Board here issued its final written decision after *Arthrex*. That should be the end of Vivint's Appointments Clause challenge. *Arthrex* likewise forecloses Vivint's second argument—that the *Arthrex* panel's remedy renders APJs unable to preside over IPR proceedings consistent with the APA because APJs are (according to Vivint) subject to the tenure protections recited in 5 U.S.C. § 7521. As the Court in *Arthrex* determined, APJs are appointed under the Patent Act (35 U.S.C. § 6) and are subject to the removal provisions governing Federal employees under 5 U.S.C. § 7513, not the more stringent removal protections of 5 U.S.C. § 7521 that apply to administrative law judges appointed under 5 U.S.C. § 3105. Because this Court already rejected the predicate fact required for Vivint's APA challenge, it too must be rejected.

## IV.  ARGUMENT

### A.  Standard of Review

Vivint has the burden to show that the Board committed reversible error. *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004). Whether a substantial new question of patentability exists is a question of fact reviewed for substantial evidence. *See In re Swanson*, 540 F.3d 1368, 1375 (Fed. Cir. 2008).

This Court reviews the Board's factual findings for substantial evidence and its ultimate determination of obviousness without deference. *Kennametal, Inc. v. Ingersoll*

*Cutting Tool Co.*, 780 F.3d 1376, 1381 (Fed. Cir. 2015). "Substantial evidence is more than a mere scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Celgene Corp. v. Peter*, 931 F.3d 1342, 1349 (Fed. Cir. 2019) (citations omitted). "This court does not reweigh evidence on appeal, but rather determines whether substantial evidence supports the Board's fact findings." *Id.* at 1352 (citations omitted). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000) (citation omitted). Even if "two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *In re Cree, Inc.*, 818 F.3d 694, 701 (Fed. Cir. 2016) (citation omitted).

Agency decisions whether to exercise discretionary provisions like § 325(d) to order reexamination are not reviewable. Thus, there is no standard of review for those decisions. If this Court were to nevertheless review the order of reexamination, it would be reviewed for abuse of discretion. In general, "an agency's interpretation of its own precedent is entitled to deference." *Ceridian Corp. v. NLRB*, 435 F.3d 352, 355 (D.C. Cir. 2006) (citations omitted). Moreover, when that precedent is in the context of a discretionary decision under the statute, the agency's decision—to the extent reviewable—would be reviewed for abuse of discretion. *Redline Detection, LLC v. Star*

*Envirotech, Inc.*, 811 F.3d 435, 442 (Fed. Cir. 2015) (reviewing how the Board manages

permissive rules for abuse of discretion). "An abuse of discretion occurs if the

decision (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous

conclusion of law; (3) rests on clearly erroneous fact findings; or (4) involves a record

that contains no evidence on which the Board could rationally base its decision." *Id.*

(citations omitted).

This Court reviews de novo a constitutional challenge to an Act of Congress.

*See Demko v. United States*, 216 F.3d 1049, 1052 (Fed. Cir. 2000).

### B. The Board Correctly Determined that the Board's Discretionary Denial in the '1091IPR Did Not Preclude a Finding of a Substantial New Question of Patentability Here

The USPTO correctly determined that the reexamination request here raised a

"substantial new question of patentability" under 35 U.S.C. § 303(a). The statute does

not define the "SNQ" standard. USPTO guidance clarifies that

> [a] prior art patent or printed publication raises a substantial question of patentability where there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication important in deciding whether or not the claim is patentable.

MPEP § 2242 (I). The Examiner expressly found that "a reasonable examiner would

consider evaluation of Shetty in view of Joao, Cheng, and/or Garton, important in

determining the patentability of the claims." Appx982. Thus, the Examiner explained,

"Shetty in view of Joao (alone or further in view of Cheng and/or Garton) raises a

substantial new question of patentability with respect to claims 1-21." Appx982-983.

Vivint does not dispute that the asserted prior art was important to deciding whether the '513 patent claims are patentable or otherwise challenge the Examiner's finding that the cited references establish a substantial question of patentability. Instead, Vivint protests that the SNQ finding must yield to the Board's discretionary denial of institution in the '1091IPR because the reexamination request identified the same patentability issues as the '1091IPR petition and thus fails to establish a "new" question of patentability.

A prior administrative proceeding does not foreclose a "substantial new question of patentability" unless "the same question of patentability has already been … decided in an earlier concluded examination or review of the patent by the Office." MPEP § 2242(I). An "earlier concluded review of the patent" includes "(D) the review of the patent in an earlier concluded trial by the Patent Trial and Appeal Board, such as a post-grant review, *inter partes* review, or covered business method review of the patent." *Id.*

The Board correctly agreed with the Examiner that the discretionary denial in the '1091IPR did not preclude an SNQ here. *See* Appx23-24; Appx982 (the Board "did not make a patentability determination with respect to [Shetty in view of Joao and/or Garton] and claims 1-21 of [the] 513 Patent.").[2] The Board here correctly

---

[2] Contrary to Vivint's assertion that the CRU granted reexamination "without even mentioning" the failed IPR petitions (Br. at 1), the reexamination order identifies each IPR petition, the prior art cited therein, and conducted an analysis of whether a question of patentability was ever decided in those IPRs with respect to the references

recognized that no "review" resulting in a "concluded trial" has ever occurred on the patentability issues raised by the reexamination request here.[3] The Board observed that the '1091IPR institution denial "merely weighed the discretionary factors governing whether to institute inter partes review" to deny trial and thus never reached the patentability merits. Appx24. Thus, there has not been a "decision in an earlier concluded examination or review of the patent by the Board" because no review occurred. *See* Appx24.

The Board's conclusion that "the Examiner did not err, and that a substantial new question of patentability exists" (Appx24) is factually correct and adheres to USPTO policy and Court precedent. MPEP § 2242 makes clear that if the Examiner finds the substantial patentability question standard met, the statutory SNQ standard is satisfied so long as "the same question of patentability as to the claim has not been <u>decided</u> by the Office in an earlier <u>concluded</u> examination or review of the patents" (*i.e.*, the question is "new") (emphasis added). The Board exercised the discretion

_____

cited in the reexamination request. Appx981-982.

[3] There is no dispute that Shetty, Cheng, and Garton were never considered during original examination or in an IPR petition; while Joao was cited in IDS, it was not discussed on the record. *See* Appx982. Similarly, there is no dispute that while Joao was included in the '0129IPR petition, that IPR was never instituted because the Board found that it had not been adequately shown that the Johnson reference qualified as a "prior art" reference under § 102. There is also no dispute that while Garton was included in the '1997IPR, the Board did not substantively address Garton in its institution denial. Vivint asserts no error on the basis of these references being previously cited to the Office, focusing instead solely on the '1091IPR.

provided by § 314 to decline to institute trial on the '1091IPR petition. No prior USPTO "review" has even engaged, let alone decided, the patentability question raised by the reexamination here. This reexamination was proper.

Against this backdrop, Vivint's attempted rewrite of the MPEP to demonstrate error fails. Vivint argues the Board misread MPEP § 2242 by relying on the language specific to a prior inter partes review. Br. 25-26.[4] Vivint does not, and cannot, identify error in the Board's reliance on the guidance that clearly applies to the facts here. The language that Vivint prefers—identifying an "earlier concluded review of the patent" as "any other contested Office proceeding which has been concluded and which involved the patent"—does not help Vivint. Vivint gives no reason why the Board should ignore the provision specific to the IPR that forms the basis for Vivint's argument, in favor of more generic language.

Even if the generic language relied upon by Vivint also applies to an IPR[5], it does not help Vivint. MPEP § 2242(I) makes plain that regardless of forum (federal court or USPTO), the earlier "concluded" proceeding must have "decided" the patentability question posed by the reexamination request for it to be said the patentability question is not "new." MPEP § 2242 (I). The Guidance explains that an SNQ exists if: (A) there is a substantial question of patentability, and "(B) the same

---

[4] Citations to Vivint's principal brief are as "Br."

[5] An interference, for example, is a "contested proceeding" that can address patentability issues for pre-AIA patents and is not otherwise identified in the different types of "earlier concluded examination or review of the patent."

question of patentability as to the claim <u>has not been decided</u> by the Office in an earlier concluded examination or review of the patent, … or decided in a final holding of invalidity (after all appeals) by a federal court in a decision on the merits involving the claim." (emphasis added). The language that Vivint prefers still incorporates the principle that forecloses its SNQ argument—no patentability question was ever decided in the '1091IPR.

More broadly, Vivint's position that a discretionary AIA trial denial that never evaluates the merits of the substantial patentability question nonetheless "decides" that patentability issue cannot be squared with the statute or this Court's precedent. Br. 24-25. Vivint improperly divorces the word "new" from "patentability question." Congress rejected a narrow reading of "new" in the SNQ standard when it amended § 303 to permit the Office to reexamine using prior art cited to, or considered by, the USPTO. *See* Public Law 107-273, 116 Stat. 1758, 1899-1906 (2002). That change "removes the focus of the new question inquiry from whether the reference was previously considered, and returns it to whether the particular question of patentability presented by the reference in reexamination was previously <u>evaluated</u> by the PTO." *Swanson*, 540 F.3d at 1380 (emphasis added) (SNQ determination requires "analysis of what the PTO actually did."). The legislative history that Vivint cites for its stringent application of the SNQ standard recognizes that only "'an argument already <u>decided</u> by the Office'" fails to raise an SNQ. *Id.* (quoting H.R. Rep. No. 96-1307); Br. 22-23. Indeed, *Swanson* concludes that an issue that the PTO has never

28

considered may raise a substantial new question. *See* 540 F.3d at 1378. *Swanson* goes on to hold that an SNQ also exists where an examiner evaluated the patentability merits of the issued claims during original examination based on the reexamination reference (Deutsch), but for a different purpose. *Id.* at 1381. It would be anomalous to nonetheless hold that the USPTO forecloses itself from considering a substantial patentability question based on an Agency decision that never even discusses, let alone resolves, the merits of that question.

*In re Recreative Techs. Corp.*, 83 F.3d 1394 (Fed. Cir. 1996), relied upon by Vivint for its stringent reading of § 303, further confirms the propriety of MPEP § 2242 (I). *See* Br. 22-24. In *Recreative Techs.*, the Court held that an SNQ of patentability cannot be based on a patentability issue that had been previously <u>resolved on its merits</u> in patentee's favor. 83 F.3d at 1396; *see id.* at 1396-97; *Swanson*, 540 F.3d at 1380. MPEP § 2242 (II.A.) reflects that holding and confirms that the proper focus of the SNQ determination with respect to prior review is whether the Office evaluated the patentability issue on its merits. Thus, Vivint's implication that a patent owner "overcomes" a patentability issue when the Board declines to even review the issue based on discretionary grounds in an IPR institution decision lacks merit. *See Recreative Techs.*, 83 F.3d at 1396 ("[I]t is improper to conduct reexamination on an old question that had been <u>finally resolved</u> during the initial examination.") (emphasis added).

Vivint's reliance on more general notions that the SNQ standard serves to prevent potential patentee harassment does not compel reversal here. Br. 21-23, 26-

27. The safeguards articulated in MPEP § 2242 (I) prevent a finding of an SNQ when there has been a prior substantive resolution of the same patentability question to prevent harassment. Vivint does not dispute that these safeguards are insufficient or are inconsistent with the statute; Vivint simply wishes the "safeguards" extended to substantial patentability questions never reached on their merits. But Vivint ignores the purpose behind ex parte reexamination in the first place. Reexamination serves a valuable public function by testing issued patents against patentability issues not previously evaluated. *See Swanson*, 540 F.3d at 1375; *Recreative Techs.*, 83 F.3d at 1396-97. Balancing these competing interests is the type of policy decision best left to Congress and the administrative agency administering the reexamination statute. Where, as here, the USPTO orders reexamination to evaluate substantial questions of patentability that have not been previously resolved on their merits, the USPTO does not negate the statutory language or purpose. Br. 27.

## C.    The USPTO's Application of § 325(d) Is Not Reviewable, and Was Not an Abuse of Discretion In Any Event

Vivint petitioned to terminate the ordered reexamination, pursuant to the second sentence of § 35 U.S.C. § 325(d):

> In determining whether to institute or order a proceeding under this chapter, chapter 30, or chapter 31, the Director may take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office.

Section 325(d) is entirely discretionary. The plain language of § 325(d) provides the Director with two discretionary powers. The statute (1) permits the Director to consider whether the "same or substantially the same" prior art or arguments had been previously presented to the USPTO in determining whether to order an ex parte reexamination; and (2) permits the Director to decline to order the reexamination if the USPTO determines the language is met. The exercise of that discretion is not judicially reviewable. Even if reviewable, Vivint fails to demonstrate any abuse of discretion here.

### 1.     The Director's wholly discretionary determination under § 325(d) is not judicially reviewable

Under 5 U.S.C. § 701(a)(2), an action "committed to agency discretion by law" is not subject to judicial review under the APA. Section 325(d) exudes agency discretion. *See Webster v. Doe*, 486 U.S. 592, 600 (1988). Section 325(d) contains no mandatory language. *See, e.g.*, *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 486-487 (2015) (rejecting unreviewability argument for statute that imposes mandatory prerequisite on agency action). The text instead gives the Director a discretionary tool that implicates the policy goals and expertise of the USPTO, further enforcing the discretionary nature of its text. *See Almond Bros. Lumber Co. v. United States*, 721 F.3d 1320, 1327 (Fed. Cir. 2013) ("A decision is more likely to be committed to an agency's discretion when it requires 'a complicated balancing of a number of factors which are peculiarly within its expertise'; for example, questions of whether agency action is

likely to be successful or whether a particular action best fits the agency's overall policies.") (quoting *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)).

Here, the text of § 325 makes clear that the agency is permitted, but never compelled, to reject a reexamination request. Section 325(d) provides only that the Director "may take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office." (Emphasis added.) *See, e.g.*, *Rastelli v. Warden, Metro. Correctional Center*, 782 F.2d 17, 23 (2d Cir. 1986) ("The use of a permissive verb—'may review' instead of 'shall review'—suggests a discretionary rather than mandatory review process."). Section 325(d) does not identify a particular circumstance in which the Director must take its language into account or deny a reexamination order if he does.

"Review is not to be had" where an act is committed entirely to agency discretion. *Heckler*, 470 U.S. at 830 (where an act's enforcement provision provided only that "the Secretary is authorized to conduct examinations and investigations," the determination of whether to conduct an investigation was unreviewable); *see Almond Bros.*, 721 F.3d at 1326-27 (a provision committed to an agency's discretion "is immune to judicial review"). Thus, § 325(d) is like the Director's "complete discretion" to institute an IPR under 35 U.S.C. § 314(a), which is unreviewable for the same reasons. *See, e.g.*, *SAS Institute v. Iancu*, 138 S. Ct. 1348, 1352, 1356 (2018) ("§ 314(a) invests the Director with discretion on the question whether to institute review.") (emphasis in original). *See also* Intervenor-USPTO Director's Response to

Appellant's Response to the Order to Show Cause, *Apple, Inc. v. Maxell, Ltd.*, Appeal Nos. 2020-2132 , -2211, -2212, -2213, 21-1033, ECF No. 35, at 11-12 (Oct. 27, 2020) ("Maxell Br.").[6]

This is not to say that an irrational departure from settled agency policy is never reviewable, *see INS v. Yang*, 519 U.S. 26, 32 (1996), but the discretionary handling of issues under § 325(d) is not settled agency policy, nor would any departure from such a policy be irrational in this case, as discussed below.

### 2. Vivint's Argument That the USPTO Had Inherent Authority to Terminate the Reexamination Goes Nowhere

Vivint argues that the USPTO should have exercised its inherent power to "reconsider" its determination to proceed with the reexamination and to terminate if it changes its mind. Br. 34-35. Vivint establishes no basis for the USPTO to have used such power. As an initial matter, it bears noting that the AIA elsewhere provides for discretionary termination of an ordered reexamination. The first sentence in § 325(d) provides that "during the pendency of any post-grant review under this chapter," the Director "may determine the manner in which" another USPTO proceeding involving the same patent "may proceed," including "termination." 35 U.S.C. § 315(d) provides for the same discretionary termination power during the pendency of an

---

[6] While decisions whether to institute an IPR trial under § 314(a) are also unreviewable per the terms of 35 U.S.C. § 314(d), that basis is separate and apart from the unreviewability of institution decisions based on the complete discretion provided to the Director in making that decision. *See* Maxell Br. at 7-10.

IPR.[7] These provisions did not apply here because the subject '513 patent was not involved in a pending PGR or IPR. *See* MPEP § 2286.01.

In any event, the power provided at § 325(d) (second sentence) is wholly discretionary; nothing in § 325(d) cabins the USPTO's ability to order a reexamination in the first instance. *See* Appx12211 n.1 (explaining that the Office may revisit the SNQ determination because if "no substantial new question of patentability is raised by the request, the Office was not authorized under 35 U.S.C. § 304 to order reexamination, i.e., the issuance of the order was an *ultra vires* action."). On top of that, the Agency has discretion whether to revisit that discretionary issue. Vivint did not provide a basis for the USPTO to exercise any inherent authority to revisit § 325(d). *See, e.g., Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1360 (Fed. Cir. 2008) ("Commerce's reconsideration was just that—a reopening and reconsideration of its previously-conducted yearly administrative reviews based on newly revealed information of TKS's fraudulent conduct, which raised questions about the integrity of the original proceedings.").

---

[7] In the *Ariosa* decisions cited by Vivint (Br. 31 n.10), the Board acted pursuant to § 315(d) to terminate ordered ex parte reexaminations in view of related pending IPR trials, even if the Board also discussed the second sentence of § 325(d) in determining whether to exercise the § 315(d) power. *See* Appx10855-10856. *See, e.g., Ariosa Diagnostics, Inc. v. Illumina, Inc.*, IPR2014-01093, Paper 81, at 13 (PTAB May 24, 2016) ("§ 315(d) is not limited to whether 'the same or substantially the same prior art or arguments previously were presented to the Office.'"); *see id.* at 9. *See also Ariosa Diagnostics v. Verinata Health, Inc.*, IPR2013-00276, Paper 63, at 7-8 (PTAB May 24, 2016) (§ 315(d) does not contains language of § 325(d) (second sentence)).

Relatedly, Vivint protests that the petition decisions penalized Vivint for filing its post-order petitions, which it asserts were necessary because the USPTO generally prohibits filings from a patent owner until after a reexamination order. Br 35-36. *See* MPEP § 2225; 37 C.F.R. § 1.540. Vivint could have raised § 325(d) (second sentence) prior to the reexamination order, but failed to do so. *See* Appx12213. Longstanding USPTO practice permits a party like Vivint to request under 37 C.F.R. § 1.183 that the Office waive the rules and accept a pre-reexamination filing. *See* Appx12211-12212. Such relief is not speculative—the USPTO waived the general prohibition against premature papers to consider Vivint's initial § 325(d) petition. *See* Appx10845-10846. Moreover, it was not necessary for Vivint to raise § 325(d) for the issue to be considered. The USPTO "reviews the [reexamination] request in view of all applicable statutes, including 35 U.S.C. 325(d), as a matter of standard procedure," as occurred here. Appx12212; *see* Appx12216; Appx981-982. *See also* MPEP § 2242 (I & II) (identifying procedure for evaluating § 325(d) issues in ex parte reexamination request in making SNQ determination). Thus, Vivint's protest that it is being "penalized" by being held to proper procedure rings hollow. And, as explained below, even if Vivint had raised the issue prior to the order granting reexamination, the order would have been the same.

### 3.    Vivint fails to demonstrate that the USPTO abused its discretion in declining to terminate the reexamination

Moreover, even if the issue were reviewable, Vivint fails to show that the USPTO abused its discretion in failing to terminate the reexamination. *See* Appx10848-10853. Vivint argues that "[b]ecause the Board denied institution of the '1091 petition based on §325(d) (among other considerations)," the USPTO acted arbitrarily and inconsistently by failing to terminate the "virtually identical" reexamination. Br. 29; *see id.* 32-33, 36-38. The premise of Vivint's argument does not prove out.

### a.    Vivint misconstrues the Board decision denying institution in the '1091IPR

The Board denied institution in the '1091IPR based on 35 U.S.C. § 314(a), not § 325(d). *See* Appx12215; '1091IPR Dec. at 14 ("For the reasons discussed above, and especially given the limited resources of the Board, we exercise our discretion not to institute review in this proceeding. *See* 35 U.S.C. § 314(a); 37 C.F.R. § 42.108."). The discretionary institution power provided under 35 U.S.C. § 314(a), and applied by the Board to deny institution of the '1091IPR petition, is limited to IPR proceedings and does not apply to ex parte reexaminations. Vivint does not, and cannot, argue that discretionary denial of IPR petitions under § 314 applies to ex parte reexamination.[8]

---

[8] Nor are the concerns explored in the '1091IPR institution decision under § 314 germane to ex parte reexaminations. For example, concerns over limited Board resources, and the Board's ability to complete the trial (as well as other IPR trials) within the statutory one-year period (*see* 35 U.S.C. § 316(a)(11)), are not relevant to

Vivint instead rewrites the Board's institution denial in the '1091IPR to root it "heavily" in § 325(d). Br. 36-37. The '1091IPR institution decision cannot bear that reading. The Board premised institution denial in the '1091IPR on concerns about "incremental" or "follow-on" petitioning, where an IPR petitioner raises different patentability issues in the later IPR petition that could have been raised in a prior IPR review. *See* '1091IPR Dec. at 5, 12-13. Of the eight factors discussed to evaluate those concerns, seven are specific to § 314(a) and AIA proceedings. *See id.* at 5-6, 9-12; Appx12215. The enumerated factors explored are specific to the issues of Board economy, including the Board's "finite resources" and the Board's ability to complete the IPR within the one-year window provided at 35 U.S.C. § 316(a)(11). *See* '1091IPR Dec. at 5-6, 13-14 (factors 1 and 2). Likewise, the § 314 factors consider issues specific to IPR petition timing, such as whether petitioner knew of the art in the later petition when it filed the earlier petition, and issues relating to the time lapse between petitions. *See id.* at 6 (factors 4, 6, & 7).

The *General Plastic* decision confirms that the first seven factors explored in the '1091IPR institution decision are specific to discretionary denial under § 314(a) in AIA proceedings based on concerns over "follow-on petitions." Moreover, *General Plastic* clarifies that AIA discretionary institution issues addressed under § 314 are not "subordinate to or encompassed by § 325(d)." *General Plastic*, 2017 WL 3917706, at *8;

---

reexamination conducted by an examiner "according to the procedures established for initial examination." *See* 35 U.S.C. § 305. *See* Appx10851-10852.

*see Oticon Medical AB et al. v. Cochlear, Ltd.*, IPR2019-00975, 2019 WL 5237817, at *4-10 (PTAB Oct. 16, 2019) (precedential as to §§ II.B. and II.C. (Mar. 24, 2020)) (separately analyzing issues specific to discretionary denial under §§ 325(d) and 314(a)).

Similarly, the USPTO has enumerated wholly different factors to address the issues unique to discretionary denial under § 325(d) in the AIA context. *See Becton, Dickinson*, 2017 WL 6405100, at *6 (articulating factual considerations for § 325(d) analysis in AIA proceedings); *Advanced Bionics,* 2020 WL 740292, at *3 (laying out two-part framework for considering the "highly factual inquiry" of § 325(d) discretion in AIA proceedings). As might be expected given the statutory language, the § 325(d) analysis explores, e.g., "the similarities and material differences between the asserted art and the prior art involved during examination;" the "extent to which the asserted art was evaluated" previously; and any error in prior USPTO consideration. *Becton, Dickinson*, 2017 WL 6405100, at *6 (factors (a), (c), and (e)). Other IPR institution decisions at the time of the '1091IPR institution decision conducted a § 325(d) analysis that reflects the *Becton, Dickinson* factors. *See, e.g., Palo Alto Networks v. Finjan*, IPR2015-01999, Paper 7, at 5-11 (PTAB Mar. 29, 2016) (under § 325(d): evaluating the similarities and differences between the art and arguments asserted in the '1999IPR petition, and the references relied on during prior reexamination; determining the extent to which the art and arguments were considered during reexamination).

Against this backdrop, Vivint's recasting of the '1091IPR institution decision as one under § 325(d) does not hold up. Vivint plucks language from the Board's § 314(a) analysis to conclude that "each of the other factors the Board addressed had significant overlap with the § 325(d) inquiry." Br. 36-37. Vivint strains to make the Board's analysis relevant to—let alone "dispositive" under—§ 325(d). Merely referring to the filing of previous IPRs, or that a prior art reference had been included in a prior petition, is not a § 325(d) analysis. The Board did not discuss, *e.g.*, how Joao or Garton had been used in prior IPR petitions. Or acknowledge that Shetty and Britton had never been previously presented against the '513 patent, either in an IPR or examination. Nor does the '1091IPR institution decision address whether, if previously presented, the "extent to which the asserted art was evaluated" during examination or a prior proceeding. *Becton, Dickinson*, 2017 WL 6405100, at *6-7 (factor (c)); *see Advanced Bionics*, 2020 WL 740292, at *3 n.9 (explaining that prior USPTO consideration which "misapprehend[ed] or overlook[ed] specific teachings of the relevant prior art where those teachings impact patentability of the challenged claims" could be basis for declining to exercise § 325(d) discretion in AIA).

To be sure, the '1091IPR institution decision identified the language of § 325(d) as an eighth factor in its § 314 analysis. '1091IPR Dec. at 11-12. However, the Board's discretionary determination on institution was based on a totality of the circumstances and driven by § 314/IPR-based concerns. As the Board noted, "[t]hese factors guide

39

our decision to exercise discretion, but all factors need not be present, and we not need give equal weight to each factor in reaching our decision." *Id.* at 7.

Moreover, while couched in terms of § 325(d), the discussion on the eighth factor does not examine whether the allegations in the IPR petition raise the "same or substantially the same prior art or arguments previously … presented to the Office." Instead, the Board pivots back to the same IPR-specific considerations regarding "follow-on petitioning" that animate the § 314-specific factors. The Board observes that "in making the determination whether Petitioner's current challenges present the same or substantially the same art or arguments as those previously presented to the Office, we may consider whether Petitioner uses information gleaned from our earlier decisions to bolster challenges it advanced unsuccessfully." *Id.* at 11-12 (citations omitted). The Board concludes by simply noting that "Petitioner acknowledges that this is the case here." *Id.* at 12. The Board's "§ 325(d)" analysis mirrors the overarching concern animating the § 314-based discretionary denial, namely that new art and argument should have been presented earlier and earlier institution denials should not be used as roadmaps for later petitions. *Id.* at 13; *see* Appx12215 ("In addition, the patent owner does not dispute that there is no mention in the language of 35 U.S.C. § 325(d) of the use of information gleaned from earlier PTAB decisions."); Appx10851 ("[W]hether the petitioner in a PTAB proceeding uses information gleaned from earlier PTAB decisions to bolster its arguments is a factor

40

considered by the PTAB when determining whether to institute inter partes review under 35 U.S.C. § 314(a).”); *see also General Plastic*, 2017 WL 3917706, at *7 (factor #3).

Thus, to the extent any conclusion can be drawn from the '1091IPR institution denial decision on the “same or substantially the same” question, the Board intimates the art and arguments raised by the '1091IPR petition are <u>different</u> from those previously presented to the Office. After all, in the Board’s view, that was the problem in the '1091IPR under § 314: Alarm.com had used past proceedings to craft patentability arguments that it had not, but could have, previously offered. More generally, the § 314 analysis is not concerned with whether the references in the '1091IPR petition are the “same or similar” as ones previously raised, but with the inefficiencies and abuse associated with whether they should have been brought sooner in an IPR petition. *See, e.g., General Plastic*, 2017 WL 3917706, at *7-8 (§ 314(a) factors address concerns about “shifts in the prior art asserted and the related arguments in follow-on petitions” and permit the USPTO to “assess and weigh whether a petitioner should have or could have raised the <u>new</u> challenges earlier”) (emphasis added).

The '1091IPR institution decision’s focus on § 314, and not § 325(d), is emphasized when contrasted with the Examiner’s analysis ordering the reexamination. *See* Appx981-982; *see also* Appx71-74; Appx12216-12217. As the reexamination order states, Shetty, Cheng, and Garton were never cited during original examination, and Joao was cited in an IDS but never discussed on the record. *See* Appx981-982;

Appx12217 (noting that Cheng was not previously raised with the Office). The order

additionally notes that other than the '1091IPR petition, the art and arguments offered

in the reexamination request here had never been presented, let alone evaluated on

their merits. *See* Appx982; Appx12216 n.13. Thus, the Examiner correctly concluded:

> [The] Examiner notes that the Shetty, Joao, and Garton references are
> now presented in a new light compared to the earlier examinations and
> proceedings in view of the material new argument and interpretation
> presented in the Request. Accordingly, the use of these references in this
> reexamination is proper. See MPEP 2242.

Appx982; *see* Appx12216-12217. Thus, the Examiner and the '1091IPR did not reach

different conclusions under the same statutory analysis. *See* Appx10848-10853.

To be clear, the issue for purposes of Vivint's argument here is not whether

any arguable focus by the Board under § 325(d) in the '1091IPR institution decision

on whether petitioner "uses information gleaned from our earlier decisions to bolster

challenges it advanced unsuccessfully" ('1091IPR Dec. at 11-12) was improper. The

point is that the '1091IPR institution decision lacks a relevant § 325(d) analysis to set

up Vivint's argument that the USPTO arbitrarily reached a different result in this

reexamination.

> **b.**     **Differences in the IPR and ex parte reexamination
> statute permit different applications of the
> discretionary provision at § 325(d)**

Lastly, even if Vivint's premise were true that the '1091IPR institution decision

denied institution because it determined that the issues raised there fell under §

325(d)'s "same or substantially the same" rubric, termination of the reexamination here would still be unwarranted.

At its core, the fundamental problem with Vivint's argument is that it improperly turns the wholly discretionary provisions at § 325(d) into a compulsory estoppel. *See* Appx12214. As the legislative history recounted by Vivint illustrates (Br. 29-31), Congress could have written § 325(d) to require the Director to consider the "same or substantially the same" question, and to trigger an estoppel in all scenarios if the term was satisfied. Congress did neither. Rather, § 325(d) leaves significant discretion to the Director whether to consider, and how to apply, the considerations underlying the statute. Vivint cannot use its dissatisfaction with Congress' choices, or the USPTO's exercise of the discretion given to it, to convert § 325(d) into a mandatory estoppel.

The discretion provided by § 325(d) means the issue is not "identical" (Br. 37) in the IPR and ex parte reexamination context. While not the case here for the reasons discussed above, the USPTO's utilization of the wholly discretionary provisions of § 325(d) in the AIA and ex parte reexamination context may permissibly differ, based on equitable and policy considerations underlying those two very different statutes. *See* Appx12215-12216; Appx10852-10855; CTPG at 63.

Vivint complains that it is not clear why differences between the two proceedings support applying § 325(d) differently in an IPR and reexamination, going so far as to assert that the differences favor applying § 325(d) more stringently in the

43

reexamination context. Br. 39-42.[9] The USPTO's petition decisions accurately explain why differing dynamics in the IPR and reexamination context support different application of § 325(d) in the latter even if the '1091IPR institution decision was solely based on § 325(d), and why such difference is not arbitrary. *See* Appx12215-12216; Appx10852-10855.

In particular, the default statutory result in the ex parte reexamination context is that <u>the patent will be reexamined if the SNQ standard is met</u>. *See* 35 U.S.C. § 304; Appx10854. Further, the ex parte reexamination statute permits the Director to order a reexamination "[o]n his own initiative." 35 U.S.C. § 303(a). Neither is true of an IPR. *See* 35 U.S.C. §§ 311(a), 314(a).

These dynamics are statutory manifestations of the meaningfully different purposes of the two proceedings. The purpose of ex parte reexamination has always been "to permit the Office to reexamine the patent on the basis of prior art [that] was not previously considered, or was not fully considered with respect to the specific claims of the patent, during an earlier examination or review of the patent." Appx10855 (noting the "strong public interest that all of the prior art be considered"); *see In re Etter*, 756 F.2d 852, 856 (Fed. Cir. 1985) ("Reexamination is thus neutral, the patentee and the public having an equal interest in the issuance and maintenance of

---

[9] Vivint proposes an alternative weighing of how various considerations should guide the USPTO's application of the discretionary provisions at § 325(d). However, this appeal is not the proper forum for modifying or otherwise compelling USPTO policy.

valid patents"). The decidedly public-interest-driven ethos behind reexamination cannot be said to apply to an IPR. AIA proceedings are adversarial, with the USPTO resolving the patentability disputes between two private parties. *SAS*, 138 S. Ct. at 1352, 1355; *see* Appx10852.

Further, the burden to the patent owner of ex parte reexamination is less than an IPR. The patent owner is not confronted with an IPR proceeding that must be instituted on all challenged claims and all grounds. *SAS*, 138 S. Ct. at 1354. That contrasts with ex parte reexamination, where the USPTO can proceed "on a claim-by-claim and ground-by-ground basis." *Id.* at 1356; Appx10854. Additionally, reexamination is then conducted pursuant to the contours of original examination, rather than the more adversarial and time-consuming litigation-like features of an IPR. The ability to tailor the reexamination's scope, coupled with the less onerous features of that proceeding, make evaluating substantial patentability questions whose merits have never been engaged in ex parte reexamination a different choice than doing the same in an IPR. As Vivint repeatedly asserts, § 325(d) was enacted to safeguard against patent owner harassment. It therefore can be no surprise that the use of the discretion under § 325(d) varies based on the relative burdens the proceedings are on the patent owner.

These considerations likely prove little consolation to a patent owner like Vivint, who wishes to avoid review of its patent, but that makes them no less meaningful in the USPTO's calculus regarding whether to exercise the discretionary

power provided at § 325(d) in the two proceedings based on the facts of a given case. The USPTO is mindful of the considerations raised by Vivint regarding harassment of patentees, and the discretionary tool that Congress has provided to safeguard those concerns. However, the USPTO must balance those valid concerns with the equally important role that the two types of proceedings play in protecting the patent system and the public, and the differences between them in affecting its statutory mission to issue and maintain strong patents.

In this case, the USPTO found an SNQ and chose not to exercise its discretion to deny the requested reexamination under § 325(d). And Vivint has not shown that § 325(d) somehow compels a different result. Even accepting Vivint's arguments at their most favorable, the most that the Board resolved in the '1091IPR institution decision was that it was appropriate to exercise § 325(d) discretion to deny institution in the IPR context. That is not a determination that the discretionary provisions of §325(d) applies in the completely different forum of ex parte reexamination. It is not an abuse of discretion, or otherwise reversible error, for the Director to order an ex parte reexamination where the USPTO correctly determines an SNQ exists, as occurred here.

### D.    Vivint's Appointments Clause and APA Arguments Are Waived and Foreclosed by Precedent

#### 1.    Vivint's *Arthrex* arguments are waived and already judicially resolved

Vivint argues that this Court's *Arthrex* decision "was flawed in two respects" but acknowledges that *Arthrex* forecloses both arguments; Vivint raises them to "preserve them for further review." Br. 43-45. Vivint apparently acknowledges, then, that this Court cannot actually adjudicate the issues it raises. Moreover, this Court may dismiss the arguments out of hand because Vivint cannot "preserve" arguments they have waived.

The Board's decision in this reexamination issued on May 4, 2020, long after this Court's decision in *Arthrex* in October, 2019. The Court in *Arthrex* severed the APJs' removal protections and found that the severing cured any Appointments Clause defect going forward. It then remanded the *Arthrex* case for rehearing before a new panel. Even though it had the benefit of this Court's *Arthrex* decision during the pendency of the Board proceedings at issue here, Vivint could have, but still did not raise to the Board any alleged Appointments Clause issue.

Vivint has forfeited any right to "preserve" its *Arthrex* arguments. "[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis in original; citations omitted). Applying *Woodford*, this Court has ruled that it will not

consider an Appointments Clause challenge to the statutory method of appointing APJs if it is raised for the first time on appeal unless the appellant shows that the situation was "exceptional." *In re DBC*, 545 F.3d 1373, 1379-80 (Fed. Cir. 2008). The Supreme Court, too, has found that only those who raise a "timely" Appointments Clause challenge are entitled to relief. *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2055 (2018) (quoting *Ryder v. United States*, 515 U.S. 177, 182-83 (1995)). In short, the "general rule" is that "a federal appellate court does not consider an issue not passed upon below," although courts maintain "discretion to decide when to deviate from that general rule." *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320, 1326 (Fed. Cir. 2019) (citations omitted).

Vivint does not attempt argue that this case is somehow "exceptional" under *DBC*, 545 F.3d at 1379-80. Instead, Vivint says its "decision" to wait and raise it for the first time before this Court is okay because the Court in *Arthrex* found the argument timely raised there. Br. 52 n.16. The Court in *Arthrex* avoided waiver there because the Appointments Clause issue was one of first impression raised "before the first body capable of providing it with the relief sought." *Arthrex* did not issue an omnibus waiver excusing future parties' forfeiture. Once the Court's *Arthrex* decision provided the relief, parties like Vivint should not be excused from failing to pursue the issue with the USPTO. Vivint forfeited the right to preserve its challenge.

Further, precedent forecloses the argument. After *Arthrex*, this Court has consistently rejected similar challenges to the *Arthrex* remedy. *See, e.g., Polaris*

48

*Innovations Ltd. v. Kingston Tech. Co.*, 792 F. App'x 820 (Fed. Cir. 2020), *reh'g and reh'g en banc denied*, No. 18-1831, ECF No. 106 (Fed. Cir. Mar. 16, 2020); *Polaris Innovations Ltd. v. Kingston Tech. Co.*, 792 F. App'x 819 (Fed. Cir. 2020), *reh'g and reh'g en banc denied*, No. 18-1768, ECF No. 121 (Fed. Cir. Apr. 2, 2020). This Court has also since held that Board decisions issuing post-*Arthrex* like this one are constitutionally sound. In particular, the Court's decision in *Caterpillar Paving Products Inc. v. Wirtgen America, Inc.*, 957 F.3d 1342 (Fed. Cir. 2020), forecloses the arguments Vivint seeks to preserve. In *Caterpillar*, this Court addressed a challenge to a Board decision issued after the *Arthrex* decision, holding that APJs "were constitutionally appointed as of the date that this court issued its decision in *Arthrex*." 957 F.3d at 1343. *Caterpillar* relied on *Arthrex*, which "expressly limit[ed] its holding" to cases where final written decisions had been issued by the PTAB prior to that date. *Id.* (citations omitted).

Vivint does not address *Caterpillar*, but it cannot avoid that decision and *Arthrex* itself by challenging the adequacy of the constitutional fix in *Arthrex*. *Caterpillar* expressly relied on the fact that *Arthrex* cured any constitutional defects for PTAB proceedings resulting in a final decision issued after the *Arthrex* decision. Vivint's disagreement with the adequacy of *Arthrex*'s remedy cannot provide a basis for ignoring it or *Caterpillar*.

49

### 2.    Vivint's APA-based arguments are waived and lack merit in any event

Vivint asserts that *Arthrex* erred by severing the removal protections at 5 U.S.C. § 7513 rather than § 7521. Br. 47-50. Vivint additionally argues that flawed remedy created a new infirmity in APJs' ability to preside over ex parte reexamination decisions under the APA because APJs are appointed under 5 U.S.C. § 3105 they must remain subject to the removal protections enumerated in 5 U.S.C. § 7521 to lawfully preside over formal adjudications, like IPRs. Br. 45-47, 50-52.

As with its related Appointments Clause arguments, Vivint forfeited these arguments by failing to raise them below and this Court should not excuse its decision to wait until this appeal to raise them. *Arthex* answers both charges, and this appeal is not the proper forum for revisiting that decision.

Vivint acknowledges that *Arthrex* held that the protections of § 7513, and not § 7521, apply to APJs. *See* Br. 47-48; 941 F.3d 1320, 1333 n.4; *see also Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760 (Fed. Cir. 2020) (denying rehearing en banc). In so holding, the Court agreed with the United States that § 7521 did not apply to USPTO APJs because "they are appointed not under 5 U.S.C. § 3105, but under 35 U.S.C. § 6." *Id.*; Brief for the United States, *Arthrex, Inc. v. Smith & Nephew, Inc.*, Appeal No. 2018-2140, 2019 WL 1236583, *33-34 (Mar. 12, 2019). Section 6, in turn, defines the functions of the APJs, including "(2) review appeals of reexaminations pursuant to

section 134(b)." Thus, the Court explained that the Patent Act, not the APA, provides for the appointment and duties of APJs, making Vivint's APA argument a dead letter.

Finally, contrary to Vivint's more general arguments that removal protections are necessary for independent and impartial executive agency adjudication (Br. 48-50), the Supreme Court has never held that tenure protections are required for Executive Branch officers. *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2197-2200 (2020). Lower courts have also correctly rejected arguments that tenure protections are necessary to "preserve [officers'] unbiased, independent judgments." *See Kalaris* v. *Donovan*, 697 F.2d 376, 394, 396 (D.C. Cir. 1983) (rejecting argument that removal restrictions were constitutionally required for members of the Department of Labor's Benefits Review Board, "inferior officers" who perform adjudications).

However, if the Court is inclined to revisit this aspect of *Arthrex*, it should defer doing so pending resolution of the Court's review in *United States v. Arthrex, Inc.*, No. 19-1434 (argument scheduled for Mar. 1, 2021).

## V.    CONCLUSION

This reexamination, reaching the unchallenged conclusion that Vivint's claims are unpatentable, was proper. Vivint fails to identify error in the USPTO's determination that the statutory "substantial new question of patentability" threshold for ex parte reexaminations was satisfied here. Vivint's attempt to use the discretionary provision at § 325(d) to abrogate the correct SNQ determination should be rejected. Moreover, Vivint's allegations that the Director abused his discretion in failing to terminate this IPR under § 325(d) should be rejected. This Court lacks jurisdiction to review decisions under the wholly discretionary provision at § 325(d). Further, even if the discretionary application of § 325(d) is judicially reviewable, Vivint fails to demonstrate that the USPTO abused its discretion in declining to apply § 325(d) in this reexamination. Vivint's recasting of the § 314 discretionary denial of the '1091IPR petition as rooted in § 325(d) finds no home in the decision. And it would not compel termination here in any event, as the § 325(d) outcome may permissibly differ in the two proceedings, given meaningful differences between the AIA and reexamination statutes. Lastly, this Court should hold Vivint to waiver for the *Arthrex* and APA arguments it seeks to preserve, which are foreclosed by binding precedent in any event. For all the reasons presented above, the USPTO respectfully requests this Court affirm the judgment below.

Dated: February 22, 2021                    Respectfully submitted,

                                            /s/ Robert J. McManus
                                            THOMAS W. KRAUSE
                                            Solicitor

                                            FARHEENA Y. RASHEED
                                            DEPUTY SOLICITOR

                                            ROBERT J. MCMANUS
                                            MAUREEN D. QUELER
                                            Associate Solicitors

                                            U.S. Patent and Trademark Office
                                            Office of the Solicitor
                                            Mail Stop 8, P.O. Box 1450
                                            Alexandria, Virginia 22313
                                            (571) 272-9035

                                            *Attorneys for the Director of the*
                                            *U.S. Patent and Trademark Office*

## **RULE 32(g) CERTIFICATE OF COMPLIANCE**

I certify pursuant to Fed. R. App. P. 32(g) that the foregoing BRIEF FOR

APPELLEE complies with the type-volume limitation required by the Court's rule.

The total number of words in the foregoing brief is 13,085 words as calculated using

the Word® software program.


/s/ Robert J. McManus
Robert J. McManus
Associate Solicitor
U.S. Patent and Trademark Office

# ADDENDUM

Trials@uspto.gov                                              Paper 11
571-272-7822                                    Entered: November 23, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

ALARM.COM INC.,
Petitioner,

v.

VIVINT, INC.,
Patent Owner.
_____

Case IPR2016-01091
Patent 6,717,513 B1
_____


Before MICHAEL R. ZECHER, JAMES B. ARPIN, and
CHARLES J. BOUDREAU, *Administrative Patent Judges*.

ARPIN, *Administrative Patent Judge*.


DECISION
Denying Institution of *Inter Partes* Review
*35 U.S.C. § 314(a) and 37 C.F.R. § 42.108*

IPR2016-01091
Patent 6,717,513 B1

# I.    INTRODUCTION

On May 24, 2016, Alarm.com Incorporated ("Petitioner") filed a Petition (Paper 1, "Pet.") requesting an *inter partes* review of claims 1–21 ("the challenged claims") of U.S. Patent No. 6,717,513 B1 (Ex. 1201, "the '513 patent").[1]  Pet. 1.  Vivint, Incorporated ("Patent Owner") filed a Preliminary Response.  Paper 10 ("Prelim. Resp.").

Based on the particular circumstances of this case, we exercise our discretion under 37 C.F.R. § 42.108 and do not institute an *inter partes* review of the challenged claims.

# II.    BACKGROUND

## A.    *Related Matters*

The '513 patent is the subject of a district court action between the parties titled *Vivint, Inc. v. Alarm.com Inc.*, No. 2:15-cv-00392-CW-BCW (D. Utah 2015), filed June 2, 2015.  Pet. 1; Paper 8, 2.  In addition to the present Petition, Petitioner has filed two other petitions challenging claims 1–21 of the '513 patent.  Case IPR2015-01997, Paper 1 ("the '1997 petition" or "'1997 Pet."); Case IPR2016-00129, Paper 1 ("the '129 petition" or "'129 Pet.").  We denied institution in each of Cases IPR2015-01997 and IPR2016-00129.

Petitioner also has filed fifteen other petitions, challenging certain claims of the following other patents owned by Patent Owner:  (1) U.S. Patent No. 6,147,601 (Cases IPR2015-02004, IPR2016-00116, IPR2016-00155, and IPR2016-01080); (2) U.S. Patent No. 6,535,123 B2 (Cases

---

[1] The subject matter of the '513 patent is described in the Decisions on Institution in IPR2015-01997 and IPR2016-00129 and is not repeated here. *E.g.*, IPR2016-00129, Paper 13, 2–5.

IPR2016-01091
Patent 6,717,513 B1

IPR2015-01995, IPR2016-00173, and IPR2016-01126); (3) U.S. Patent No.

6,462,654 B1 (Cases IPR2015-02003, IPR2016-00161, IPR2016-01110, and

IPR2016-01124); (4) U.S. Patent No. 6,924,727 B2 (Cases IPR2015-01977

and IPR2015-02008); and (5) U.S. Patent No. 7,884,713 B1 (Cases

IPR2015-01965 and IPR2015-01967).  Pet. 2; Paper 8, 1–2.

> *B.     Illustrative Claims*

Of the challenged claims, claims 1, 7, 8, 15, and 19–21 are

independent.  Claim 1 is illustrative and is reproduced below:

> 1. A method of monitoring and controlling remote equipment, comprising the steps of:
>
> a)  determining a state of at least one parameter of at least one piece of the remote equipment;
>
> b)  communicating a message indicative of the state from the piece of remote equipment to a computer server as an incoming message;
>
> c)  enabling a user to remotely configure or modify a user-defined message profile containing outgoing message routing instructions, the user-defined message profile being storable on the computer server;
>
> d)  enabling a user to remotely send command messages to the remote equipment via the computer server to remotely control the remote equipment;
>
> e)  determining whether an incoming message is an incoming exception message indicative of improper operation of the piece of remote equipment;
>
> f)  if it is determined in step e) that an incoming message is an incoming exception message, forwarding at least one outgoing exception message based on the incoming message to at least one user-defined communication device specifiable in the user-defined message profile, wherein the

3

IPR2016-01091
Patent 6,717,513 B1

> user can remotely configure or modify the user-defined
> message profile by remotely accessing the computer server.

Ex. 1201, col. 16, ll. 26–51.  Like claim 1, independent claims 5 and 7
are directed to methods of monitoring and controlling remote
equipment; and, like claim 8, independent claims 15 and 19–21 are
directed to systems for monitoring and controlling remote equipment.
*Id.* at col. 16, l. 61–col. 17, l. 13, col. 17, ll. 19–33, col. 18, ll. 21–48,
col. 18, l. 59–col. 20, l. 29.  Challenged claims 2–4 depend directly or
indirectly from claim 1; challenged claim 6 depends from claim 5;
challenged claims 9–14 depend directly or indirectly from claim 8;
and challenged claims 16–18 depend directly or indirectly from claim
15.  *Id.* at col. 16, ll. 52–60, col. 17, ll. 14–18, col. 17, l. 62–col. 18, l.
21, col. 18, ll. 49–58.

### C.    *Applied References and Declaration*

Petitioner relies upon the following references and declaration in
support of its grounds for challenging the claims of the '513 patent:

| Exhibit | References and Declaration |
|---------|----------------------------|
| 1205 | U.S. Patent No. 5,808,907, issued Sept. 15, 1998 ("Shetty")[2] |
| 1206 | U.S. Patent No. 5,134,644, issued July 28, 1992 ("Garton")[3] |
| 1207 | U.S. Patent No. 6,040,770, issued Mar. 21, 2000, filed Sept. 4, 1998 ("Britton")[4] |

[2]  On October 30, 2015, Petitioner previously asserted Shetty against U.S.
Patent No. 6,147,601, owned by Patent Owner in Case IPR2016-00116.
Case IPR2016-00116, Paper 1, 4; *see supra* Section II.A.
[3] On September 28, 2015, Petitioner previously asserted Garton against the
'513 patent in Case IPR2015-01997.  1997 Pet. 5–6; *see supra* Section II.A.
[4] On September 28, 2015, Petitioner previously asserted Britton against U.S.
Patent No. 6,535,123 B2, owned by Patent Owner, in Case IPR2015-01995.
Case IPR2015-01995, Paper 1, 5; *see supra* Section II.A.

IPR2016-01091
Patent 6,717,513 B1

| Exhibit | References and Declaration |
|---------|----------------------------|
| 1208 | U.S. Patent No. 5,917,405, issued June 29, 1999, filed July 18, 1996 ("Joao")[5] |
| 1209 | Declaration of V. Thomas Rhyne, III, Ph.D., P.E., R.P.A.[6] |

Pet. 5–6.

D.    *Asserted Grounds of Unpatentability*

Petitioner challenges the patentability of claims 1–21 of the

'513 patent on the following grounds:

| Ground | References | Claim(s) |
|--------|-----------|----------|
| 35 U.S.C. § 103(a) | Shetty and Joao | 1–13 and 15–21 |
| 35 U.S.C. § 103(a) | Shetty, Joao, and Britton | 14 |
| 35 U.S.C. § 103(a) | Shetty, Joao, and Garton | 8–13 and 15–21 |
| 35 U.S.C. § 103(a) | Shetty, Joao, Britton, and Garton | 14 |

Pet. 6–7.

## III.    DISCUSSION

A.    *Discretionary Non-Institution*

Institution of *inter partes* review is discretionary.  *See* 35 U.S.C.

§ 314(a); 37 C.F.R. § 42.108.  There is no *per se* rule against a petitioner

filing a second petition to address a patent claim on which the Board

previously declined to institute a review.  Rather, panels of this Board have

considered a variety of factors in deciding whether to exercise their

discretion not to institute review, including, *inter alia*:

(1) the finite resources of the Board;

---

[5] On November 2, 2015, Petitioner previously asserted Joao against the '513 patent in Case IPR2016-00129.  129 Pet. 5; *see supra* Section II.A.
[6] In Cases IPR2015-01997 and IPR2016-00129, Petitioner relied upon Declarations of Arthur Zatarain, PE.  Case IPR2015-01997, Ex. 1009; Case IPR2016-00129, Ex. 1109.

IPR2016-01091
Patent 6,717,513 B1

    (2) the requirement under 35 U.S.C. § 316(a)(11) to issue a
        final determination not later than one year after the date on
        which the Director notices institution of review;

    (3) whether the same petitioner previously filed a petition
        directed to the same claims of the same patent;

    (4) whether, at the time of filing of the earlier petition, the
        petitioner knew of the prior art asserted in the later petition
        or should have known of it;[7]

    (5) whether, at the time of filing of the later petition, the
        petitioner already received the patent owner's preliminary
        response to the earlier petition or received the Board's
        decision on whether to institute review in the earlier
        petition;[8]

    (6) the length of time that elapsed between the time the
        petitioner learned of the prior art asserted in the later petition
        and the filing of the later petition;

    (7) whether the petitioner provides adequate explanation for the
        time elapsed between the filing dates of multiple petitions
        directed to the same claims of the same patent; and

---

[7] *See Conopco, Inc. v. Proctor & Gamble Co.*, Case IPR2014-00506, slip op. at 4 (PTAB Dec. 10, 2014) (Paper 25) (informative), and slip op. at 6 (PTAB July 7, 2014) (Paper 17); *Toyota Motor Corp. v. Cellport Sys., Inc.*, Case IPR2015-01423, slip op. at 8 (PTAB Oct. 28, 2015) (Paper 7) ("*Toyota Motor Corp.*").

[8] *See Conopco, Inc. v. Proctor & Gamble Co.*, Case IPR2014-00628, slip op. at 11 (PTAB October 20, 2014) (Paper 21) (discouraging filing of a first petition that holds back prior art for use in later challenges against the same patent if the first petition is denied); *Toyota Motor Corp.*, slip op. at 8 ("[T]he opportunity to read Patent Owner's Preliminary Response in IPR2015-00634, prior to filing the Petition here, is unjust.").

IPR2016-01091
Patent 6,717,513 B1

> (8) whether the same or substantially the same prior art or
> arguments previously were presented to the Office.[9]

*See LG Electronics Inc. v. Core Wireless Licensing S.A.R.L.*, Case IPR2016-00986, slip op. at 6–7 (PTAB Aug. 22, 2016) (Paper 12) ("*LG Elecs.*"); *NVIDIA Corp. v. Samsung Elec. Co.*, Case IPR2016-00134, slip op. at 6–7 (PTAB May 4, 2016) (Paper 9); *Unified Patents, Inc. v. PersonalWeb Techs., LLC*, Case IPR2014-00702, slip op. at 7–9 (PTAB July 24, 2014) (Paper 13); *see also* Amendments to the Rules of Practice for Trials Before the Patent Trial and Appeal Board, 81 Fed. Reg. 18750, 18759 (Apr. 1, 2016) ("[T]he current rules provide sufficient flexibility to address the unique factual scenarios presented to handle efficiently and fairly related proceedings before the Office on a case-by-case basis, and that the Office will continue to take into account the interests of justice and fairness to both petitioners and patent owners where multiple proceedings involving the same patent claims are before the Office."). These factors guide our decision to exercise discretion, but all factors need not be present, and we not need give equal weight to each factor in reaching our decision.

With these factors in mind, and for the reasons that follow, we exercise our discretion and do not institute a review in the current Petition.

---

[9] *See* 35 U.S.C. § 325(d) ("In determining whether to institute or order a proceeding under . . . chapter 31 [providing for *inter partes* review], the Director may take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office.").

IPR2016-01091
Patent 6,717,513 B1

### 1. Previous Challenges

As mentioned above, Petitioner has filed two other petitions requesting an *inter partes* review of claims 1–21 of the '513 patent.  Pet. 3–4.

In the '1997 petition, filed September 28, 2015, Petitioner challenged claims 1 and 4–21 of the '513 patent as anticipated by Scadaware,[10] claims 2 and 3 as obvious over Scadaware and Austin,[11] and claims 8–21 as obvious over Scadaware and Garton.  '1997 Pet. 5–6.  In a decision denying institution, entered on April 7, 2016, we concluded that Petitioner had failed to demonstrate a reasonable likelihood that it would prevail at trial in demonstrating that any challenged claim is unpatentable on the asserted grounds, and we did not institute an *inter partes* review with respect to any of those claims.  Case IPR2015-01997, Paper 15, 35.

In the '129 petition, filed November 2, 2015, Petitioner challenged claims 1–9, 13, 15, 16, and 19–21 as anticipated by Johnson;[12] claims 10–12, 14, 17, and 18 as obvious over Johnson and Joao; and claim 14 as obvious over Johnson, Joao, and BACnet.[13]  '129 Pet. 9.  In a decision denying institution, entered on May 3, 2016, we concluded that Petitioner

---

[10] *SCADAWARE*™ *System Design Concepts*, Doc. 1010-03 (Total Engineering Services Team, Inc., New Orleans, La.) ("Scadaware").
[11] U.S. Patent No. 6,370,569 B1, issued April 9, 2002, filed November 3, 1998 ("Austin").
[12] U.S. Patent No. 6,553,336 B1, issued April 22, 2003, filed June 26, 2000 (priority claimed to U.S. Provisional Patent Application No. 60/140,793, filed June 25, 1999) ("Johnson")
[13] American Society of Heating, Refrigerating and Air Conditioning Engineers, Inc., *BACnet®: A Data Communication Protocol for Building Automation and Control Networks*, ANSI/ASHRAE Standard 135-1995 (including ANSI/ASHRAE Addendum 135*a*-1999), (©1995) ("BACnet").

IPR2016-01091
Patent 6,717,513 B1

had failed to demonstrate a reasonable likelihood that it would prevail at trial in demonstrating that any challenged claim is unpatentable on the asserted grounds, and we did not institute an *inter partes* review with respect to any of those claims.[14]  Case IPR2016-00161, Paper 16, 18.

### 2. Discretionary Factors

With regard to the third factor listed above, the instant Petition represents Petitioner's *third* petition specifically challenging each of claims 1–21, each of these claims having been challenged previously in Cases IPR2015-01997 *and* IPR2016-00129.

Turning to the fourth and sixth factors, Petitioner does not allege that the references relied upon in the Petition previously were unknown to it. *See* Prelim. Resp. 13–15.  Nor could it, because, as set forth above, Petitioner previously relied on Garton[15] in Case IPR2015-01997, and also relied on Joao in Case IPR2016-00129.  Moreover, as noted above, Petitioner asserted grounds based on Britton in Case IPR2015-01995 and based on Shetty in Case IPR2016-00116.  Referring to the timeline set forth in Exhibit 3001, Petitioner had asserted each of Garton, Britton, Shetty, and Joao against

---

[14] *See* 35 U.S.C. § 315(d) ("[D]uring the pendency of an inter partes review, if another proceeding or matter involving the patent is before the Office, the Director may determine the manner in which the inter partes review or other proceeding or matter may proceed, including providing for stay, transfer, consolidation, or termination of any such matter or proceeding.").

[15] Petitioner incorrectly argues that none of the references asserted in the Petition was asserted in the petition in Case IPR2015-01997.  Pet. 3; *see* Prelim. Resp. 6–7 (accusing Petitioner of "a false statement").  Petitioner, however, clearly relied on Garton in its asserted ground challenging claims 8–21 in Case IPR2015-01997.  '1997 Pet. 5–6.

IPR2016-01091
Patent 6,717,513 B1

patents owned by Patent Owner by November 2, 2015, more than six months prior to the filing date of the instant Petition on May 24, 2016.

With respect to the fifth and seventh factors, in view of the timeline in Exhibit 3001, Petitioner had received both the preliminary responses and our decisions in each of the cases previously challenging claims 1–21 of the '513 patent (Cases IPR2015-01997 and IPR2016-00129) before filing the instant Petition. Pet. 3–4. In addition, Petitioner had received both the preliminary responses and our decisions in each of the cases in which the applied references were asserted: Garton (Case IPR2015-01997), Britton (Case IPR2015-01995), Shetty (Case IPR2016-00116), and Joao (Case IPR2016-00129)). Ex. 3001.

Patent Owner contends that Petitioner used our decisions in the earlier cases as a roadmap for attempts to remedy deficiencies in its earlier petitions. Prelim. Resp. 4–5, 15–16. Patent Owner points to Petitioner's discussion of its earlier unsuccessful challenges to claims 1–21 of the '513 patent as evidence of Petitioner's improper use of our decisions in an effort to perfect its present challenges. *Id.* We agree. Further, Petitioner acknowledges that the instant Petition attempts to refine the construction of the term "message profile containing outgoing message routing instructions" in view of our construction of that term in our decision to institute review in challenges, based on Shetty, to claims in Case IPR2016-00116. Pet. 17 n.5. Petitioner also provides no explanation as to why claims 1–21 of the '513 patent could not have been challenged over Shetty and Joao, alone or in combination with Britton and or Garton, in the '129 petition or in a contemporaneously filed petition. Thus, the instant Petition is essentially a composite response to our decisions in those earlier proceedings. Petitioner

IPR2016-01091
Patent 6,717,513 B1

also offers no other explanation for the length of time that elapsed between the time it learned of the referenced art here asserted, i.e., at least November 2, 2015, and the filing date of the instant Petition, i.e., May 24, 2016. Because the instant Petition was filed only about one week prior to the raising of the Section 315(b) bar against further challenges to claims 1–21 of the '513 patent, we can discern no other motivation apart from the information to be gleaned from Patent Owner's preliminary responses and our decisions on institution in the related cases. *See* Prelim. Resp. 16–17.

Finally, with regard to the eighth factor, Patent Owner contends that Petitioner's current challenges present the same or substantially the same art or arguments as those previously presented to the Office. Prelim. Resp. 5–13; *see* 35 U.S.C. § 325(d). Initially, we note that Patent Owner contends that two of the four references relied upon in the instant Petition previously were relied upon by Petitioner in challenges to claims 1–21 of the '513 patent. Prelim. Resp. 12–13. In relying on Shetty, Joao, and Britton, Petitioner appears to be applying new references to replace Scadaware and Johnson, which it relied upon in Cases IPR2015-01997 and IPR2016-00129, respectively. *Id.* at 6–8. The added references were intended merely to correct deficiencies noted in references relied upon in the earlier petitions, but Patent Owner maintains that the new references are substantially the same as the previous references (*id.* at 12–13) and that the new arguments remain substantially the same as the previous arguments after insertion of the new art (*id.* at 5–12). Further, in making the determination whether Petitioner's current challenges present the same or substantially the same art or arguments as those previously presented to the Office, we may consider whether Petitioner uses information gleaned from our earlier decisions to

IPR2016-01091
Patent 6,717,513 B1

bolster challenges it advanced unsuccessfully. *See NRT Tech. Corp v. Everi Payments Inc*., Case CBM2016-00080, slip op. at 10 (PTAB Nov. 10, 2016) (Paper 12) (citing *Unilever, Inc. v. Procter & Gamble Co.*, Case IPR2014-00506, slip op. at 8 (PTAB July 7, 2014) (Paper 17) (informative)). Petitioner acknowledges that this is the case here. *See, e.g.*, Pet. 17 n.5.

These facts suggest that at least this latest proceeding is a case of undesirable, incremental petitioning, in which a petitioner relies on a patent owner's contentions and/or a Board decision in an earlier proceeding or proceedings involving the same parties, the same patent, and the same claims to mount another challenge after an earlier, unsuccessful or only partially successful challenge, by fixing deficiencies, noted by the Board, that were within the petitioner's capacity to avoid in the earlier petition or petitions. *See LG Elecs.*, slip op. at 11. As Patent Owner points out in its Preliminary Response, the Board repeatedly has exercised its discretion to deny petitions where petitioners similarly have used prior Board decisions as a roadmap to correct past deficiencies. Prelim. Resp. 4–5, 8–11, 15–17; *see also Travelocity.com L.P. v. Cronos Tech., LLC*, Case CBM2015-00047, slip op. at 13 (PTAB June 15, 2015) (Paper 7) ("Moreover, a decision on a petition . . . is not simply part of a feedback loop by which a petitioner may perfect its challenges through a subsequent filing."). As the Board explained in *Butamax Advanced Biofuels LLC v. Gevo, Inc.*, cited by Patent Owner (Prelim. Resp. 15), "[a]llowing similar, serial challenges to the same patent, by the same petitioner, risks harassment of patent owners and frustration of Congress's intent in enacting the Leahy-Smith America Invents Act." Case IPR2014-00581, slip op. at 12–13 (PTAB Oct. 14, 2014) (Paper 8) (citing H.R. Rep. No. 112-98, pt. 1, at 48 (2011)).

12

IPR2016-01091
Patent 6,717,513 B1

Consequently, with regard to the first and second factors, the following discussion from *LG Electronics* is particularly apt:

> We are concerned about the limited resources of the Board and fundamental fairness for both Petitioner and Patent Owner. Petitioner cannot expect automatic acceptance of multiple petitions for consideration, if they are against the same claims of the same patent and filed so long apart that Petitioner received the benefit of having studied Patent Owner's Preliminary Response in the first petition or the Board's decision on whether to institute review in the first petition, prior to filing the second petition. *That is especially so if Petitioner, at the time of filing of the first petition was aware of or should have been aware of the prior art references applied in the second petition.*
>
> The potential for inequity resulting from a petitioner's filing of serial attacks against the same claims of the same patent, while having the opportunity to adjust litigation positions along the way based on either the patent owner's contentions responding to prior challenges or the Board's decision on prior challenges, is real and cannot be ignored. This is not to say, however, that multiple petitions against the same claims of the same patent are never permitted. Rather, each case depends on its own facts. We look to and consider, in each case, as we do here, what rationale a petitioner offers for filing multiple petitions and for the time elapsed between those filings.

*LG Elecs.*, slip op. at 7–8 (emphasis added); *see also Samsung Elec. Co. v. Rembrandt Wireless Techs., LP*, Case IPR2015-00114, slip op. at 6 (PTAB Jan. 28, 2015) (Paper 14) ("[I]t is more efficient for the parties and the Board to address a matter once rather than twice."); *ZTE Corp. v. ContentGuard Holdings, Inc.*, Case IPR2013-00454, slip op. at 5–6 (PTAB Sept. 25, 2013) (Paper 12) ("The Board is concerned about encouraging, unnecessarily, the filing of petitions which are partially inadequate."). The Board's resources would be more fairly expended on initial petitions, rather than on follow-on petitions, such as the Petition in this case. This is

IPR2016-01091
Patent 6,717,513 B1

especially apparent when, as here, we are confronted with the third challenge to a patent and a total of eighteen challenges to six, commonly-owned patents. *See supra* Section II.A.; *see also* Prelim. Resp. 16 (providing a table identifying fourteen challenges to four related patents).

After weighing the factors identified above, we conclude that those factors weigh in favor of denying institution of review based on the instant Petition.

### B.     *Conclusion*

For the reasons discussed above, and especially given the limited resources of the Board, we exercise our discretion not to institute review in this proceeding. *See* 35 U.S.C. § 314(a); 37 C.F.R. § 42.108.

### IV.     ORDER

Accordingly, it is

ORDERED that the Petition is *denied*, and no trial or *inter partes* review is instituted for claims 1–21 of the '513 patent on any asserted ground.

14

IPR2016-01091
Patent 6,717,513 B1

For PETITIONER:

William H. Mandir
Brian K. Shelton
SUGHRUE MION PLLC
wmandir@sughrue.combshelton@sughrue.com


Roger G. Brooks
Teena-Ann V. Sankoorikal
CRAVATH, SWAINE & MOORE LLP
rgbrooks@cravath.comtsankoor@cravath.com


For PATENT OWNER:

Robert Greene Sterne
Jason D. Eisenberg
Joseph E. Mutschelknaus
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
rsterne-PTAB@skgf.comjasone-PTAB@skgf.com
jmutsche-PTAB@skgf.com