2020-1992

---

# United States Court of Appeals for the Federal Circuit

---

**In re: VIVINT, INC.,**

**Appellant**

**Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Reexamination No. 90/020,115**

---

## APPELLANT'S REPLY BRIEF

---

Robert Greene Sterne
Jason D. Eisenberg
William H. Milliken
STERNE KESSLER GOLDSTEIN & FOX
  PLLC
1100 New York Avenue, NW
Washington, DC 20005
202.371.2600

*Counsel for Appellant Vivint, Inc.*

Dated:  March 15, 2021

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 20-1992 |
| **Short Case Caption** | In re: Vivint, Inc. |
| **Filing Party/Entity** | Appellant Vivint, Inc. |

---

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/29/2020

Signature: /s/ Robert Greene Sterne

Name: Robert Greene Sterne

| 1. **Represented Entities.** Fed. Cir. R. 47.4(a)(1). | 2. **Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | 3. **Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Vivint, Inc. | | Vivint Group, Inc. |
| | | APX Group, Inc. |
| | | APX Group Holdings, Inc. |
| | | Legacy Vivint Smart Home, Inc. |
| | | Vivint Smart Home, Inc. |
| | | 313 Acquisition LLC |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable        ☐ Additional pages attached

| | | |
|---|---|---|
| Sean C. Flood,<br>Sterne, Kessler, Goldstein & Fox PLLC | Joseph Mutschelknaus,<br>Sterne, Kessler, Goldstein & Fox PLLC | |
| George Howarah,<br>Sterne, Kessler, Goldstein & Fox PLLC | | |
| Lauren Schleh,<br>Sterne, Kessler, Goldstein & Fox PLLC | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable        ☐ Additional pages attached

| | | |
|---|---|---|
| Vivint, Inc. v. Alarm.com,<br>No. 2:15-cv-392 (D. Utah.) | Vivint, Inc. v. Alarm.com Inc.,<br>No. 19-2438 (Fed. Cir.) | Vivint, Inc. v. Alarm.com Inc.,<br>No. 19-2439 (Fed. Cir.) |
| Vivint, Inc. v. Alarm.com Inc.,<br>No. 17-2218 (Fed. Cir.) | Vivint, Inc. v. Alarm.com Inc.,<br>No. 17-2219 (Fed. Cir.) | Vivint, Inc. v. Alarm.com Inc.,<br>No. 17-2220 (Fed. Cir.) |
| Reexamination No. 90/014,007 (U.S.P.T.O.) | Reexamination No. 90/014,521 (U.S.P.T.O.) | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable        ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

I.   The Board erred in finding a substantial new question of patentability. ....................................................................................3

    A.   Alarm.com's reexamination request did not raise a substantial new question of patentability because it was a nearly verbatim copy of Alarm.com's already-rejected '1091 IPR petition. .................3

    B.   The Director's contrary arguments lack merit. ....................................4

        1.   The Director's interpretation of the substantial-new-question standard conflicts with the statue's language and the legislative purpose. ................................................. 4

        2.   The MPEP supports Vivint's position, not the Director's. ...................................................................... 6

II.  The Office's maintenance of this reexamination proceeding notwithstanding § 325(d) was arbitrary and capricious. ................................8

    A.   The Director's attempts to insulate this issue from judicial review lack merit. ............................................................8

    B.   The Office's refusal to terminate the reexamination was arbitrary and capricious. ....................................................12

        1.   The Director concedes that two of the primary bases for OPLA's refusal to terminate were legally erroneous. ............. 12

        2.   The Board relied on § 325(d) to deny institution of the '1091 IPR, and the Director's attempt to re-write the Board's decision to show otherwise lacks merit...................... 14

        3.   Because the reexamination request simply copied the '1091 IPR petition, the Office acted arbitrarily and capriciously in treating the two filings differently under § 325(d). ................................................................. 17

III. The maintenance of this proceeding violated the Appointments Clause and the Administrative Procedure Act.................................20

    A.   This Court's decision in *Arthrex* directly refutes the Director's forfeiture argument. ...............................................22

    B.   Vivint's APA argument is not foreclosed by *Arthrex*.........................23

    C.   If the Court does not vacate this reexamination proceeding, it should hold this case pending the Supreme Court's resolution of *Arthrex*. ..........................................................25

CONCLUSION ............................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaniz v. Office of Pers. Mgmt.*,
    728 F.2d 1460 (Fed. Cir. 1984) ..........................................................9

*Armstrong v. Bush*,
    924 F.2d 282 (D.C. Cir. 1991).....................................................10, 11

*Arthrex, Inc. v. Smith & Nephew*,
    941 F.3d 1320 (Fed. Cir. 2019) ...............................................*passim*

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
    953 F.3d 760 (Fed. Cir. 2020) ..........................................................22

*Automated Merchandising Sys., Inc. v. Lee*,
    782 F.3d 1376 (Fed. Cir. 2015) ........................................................14

*BioDelivery Sciences Int'l, Inc. v. Aquestive Therapeutics, Inc.*,
    898 F.3d 1205 (Fed. Cir. 2018) ........................................................23

*Caterpillar Paving Products Inc. v. Wirtgen America, Inc.*,
    957 F.3d 1342 (Fed. Cir. 2020) ........................................................23

*Customedia Techs., LLC v. Dish Network Corp.*,
    941 F.3d 1174 (Fed. Cir. 2019) ........................................................25

*Dickson v. Sec'y of Defense*,
    68 F.3d 1396 (D.C. Cir. 1995).............................................................9

*Distrigas of Mass. Corp. v. F.E.R.C.*,
    737 F.2d 1208 (1st Cir. 1984)...........................................................10

*INS v. Yang*,
    519 U.S. 26 (1996).........................................................................9, 11

*Mach Mining, LLC v. E.E.O.C.*,
    575 U.S. 480 (2015).............................................................................8

*Maracich v. Spears*,
    570 U.S. 48 (2013)...............................................................................7

ii

*McCarthy v. Merit Sys. Prot. Bd.*,
  809 F.3d 1365 (Fed. Cir. 2016) ............................................................8

*Oil States Energy Serv. LLC v. Greene's Energy Grp., LLC*,
  138 S. Ct. 1365 (2018) ..........................................................................19

*Patlex Corp. v. Mossinghoff*,
  771 F.2d 480 (Fed. Cir. 1985) ................................................................3

*In re Recreative Techs. Corp.*,
  83 F.3d 1394 (Fed. Cir. 1996) ........................................................1, 3, 5

*SAS Institute, Inc. v. Iancu*,
  138 S. Ct. 1348 (2018) ..........................................................................23

*Spencer Enters., Inc. v. United States*,
  345 F.3d 683 (9th Cir. 2003) ...................................................................9

*In re Swanson*,
  540 F.3d 1368 (Fed. Cir. 2008) ...............................................................3

*Transactive Corp. v. United States*,
  91 F.3d 232 (D.C. Cir. 1996) .................................................................17

*United States v. Smith*,
  499 U.S. 160 (1991) ................................................................................11

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
  139 S. Ct. 361 (2018) ............................................................................8, 9

**Statutes**

5 U.S.C. § 556(b) ........................................................................................23

5 U.S.C. § 701(a)(2) .....................................................................................8

5 U.S.C. § 706(2)(A) ..............................................................................8, 10

5 U.S.C. § 7513 ...........................................................................................24

35 U.S.C. § 303 .........................................................................................1, 5

35 U.S.C. § 303(a) ........................................................................................3

35 U.S.C. § 304 ..................................................................................12

35 U.S.C. § 305 ..................................................................................12

35 U.S.C. § 314(a) .............................................................................11

35 U.S.C. § 325(d) .......................................................................*passim*

**Other Authorities**

157 Cong. Rec. S1376 (Mar. 8, 2011) (statement of Sen. Kyl)...............18

H.R. Rep. No. 107-120 (2001)................................................................4

MPEP § 2242(I) ...................................................................................6

The reexamination proceeding below should be terminated for two independent reasons.

*First*, Alarm.com's reexamination request did not present a "substantial new question of patentability" under 35 U.S.C. § 303 because the request was a near-carbon copy of an already-rejected IPR petition that Alarm.com had previously filed (which itself was Alarm.com's *third* unsuccessful attempt to invalidate the '513 patent). This is exactly the sort of situation the substantial-new-question was designed to prevent. *See In re Recreative Techs. Corp.*, 83 F.3d 1394, 1397 (Fed. Cir. 1996).

*Second*, because the Board had denied Alarm.com's third IPR petition under § 325(d), the Office committed legal error in later ignoring § 325(d) and allowing Alarm.com to advance the *exact same argument* in the guise of a reexamination request. Basic principles of administrative law dictate that agencies must follow their own precedent and make consistent decisions. The agency's inconsistent application of § 325(d) here was flatly inconsistent with these principles.

The Director's responses to these arguments are not persuasive. As to the substantial-new-question issue, the Director does not engage with the language of the statute. Nor does the Director explain (because he cannot) how the result here is consistent with the legislative concerns motivating the statute's passage. Instead, the Director relies, as the Office did below, on a section of the Manual of Patent

1

Examination Procedure interpreting § 303. But the MPEP supports Vivint's position, not the Director's. And, in any event, if there were a conflict, the statute would necessarily take precedence.

As to the § 325(d) issue, the Director first attempts to evade review altogether, arguing that the Office's application of § 325(d) is "committed to agency discretion by law." But it is settled law that, even when it comes to matters of agency discretion, courts can—and, indeed, must—review whether agencies have consistently exercised that discretion. The Director has not rebutted the strong presumption in favor of judicial review of agency action.

The Director's arguments on the merits fare no better. The Director largely does not defend the reasons the agency provided for refusing to terminate this proceeding under § 325(d). Instead, the Director vaguely asserts that there are differences between IPRs and ex parte reexaminations that permit the Office to apply the statute differently in the two types of proceedings. But none of the Director's asserted distinctions holds water, and—more fundamentally—nothing in the *text* of § 325(d) supports the agency's differential application of the statute.

The decision below should be set aside.

## I.    The Board erred in finding a substantial new question of patentability.

### A.    Alarm.com's reexamination request did not raise a substantial new question of patentability because it was a nearly verbatim copy of Alarm.com's already-rejected '1091 IPR petition.

The statute governing reexaminations provides that the Office may grant a reexamination request only if the request raises a "substantial new question of patentability." 35 U.S.C. § 303(a). This Court has repeatedly recognized that the substantial-new-question standard was established to prevent "abusive tactics and burdensome procedures" that would "harass the patentee and waste patent life." *Recreative Techs.*, 83 F.3d at 1397; *see also In re Swanson*, 540 F.3d 1368, 1375 (Fed. Cir. 2008); *Patlex Corp. v. Mossinghoff*, 771 F.2d 480, 483 (Fed. Cir. 1985); Op. Br. 21–22.

This case is a paradigmatic example of the type of harassment the substantial-new-question standard was enacted to prevent.

Days before the § 315(b) bar date, Alarm.com filed the third in a series of three IPR petitions against the '513 patent. The Board denied institution, concluding that Alarm.com's tactics were "a case of undesirable, incremental petitioning" that "risk[ed] harassment of patent owners and frustration of Congress's intent" and raised a serious "potential for inequity." *Alarm.com Inc. v. Vivint, Inc.*, IPR2016-01091, Paper 11 at 12–13 (P.T.A.B. Nov. 23, 2016) ("'1091 Decision"). Alarm.com then repackaged the '1091 petition almost *verbatim* into the request that led to this

reexamination. *See* Op. Br. 11. The Director's statement that the reexamination request presented "some of the same art and obviousness issues" as the '1091 petition, Director Br. 1, is thus, to put it mildly, an understatement.

This history demonstrates that the issues raised in the reexamination request were not "new." Those arguments had been rejected in the '1091 IPR—based on *concerns about patentee harassment*, no less—and they should have likewise been rejected under the substantial-new-question standard. Again, it bears emphasis that the SNQ standard was enacted to prevent exactly this sort of harassment. *See* H.R. Rep. No. 107-120, 2001 WL 729310, at *3 (2001) (stressing that reexaminations should not be used "to abuse patentees and waste the life of a patent").

## B.    The Director's contrary arguments lack merit.

### 1.    The Director's interpretation of the substantial-new-question standard conflicts with the statue's language and the legislative purpose.

The Director contends that the reexamination request presented a substantial new question of patentability because the Office had not previously decided the Shetty-Joao-Garton obviousness issue *on the merits*. Director Br. 26–27. In support of this argument, the Director relies (as the Board did) exclusively on § 2242 of the MPEP.

Even if the MPEP supported the Director's position, however, that would be irrelevant. The Director does not and cannot square its argument with the language

of the *statute*, which requires a "new" question of patentability. *See Recreative Techs.*, 83 F.3d at 1398 ("when a section of the MPEP is inconsistent with the statute it must yield to the legislative purpose"). A question that has already been presented to and addressed by the Office—whether on the merits or otherwise—is not "new" under any reasonable interpretation of that word.

Put differently, the Director would read § 303 to permit reexamination if the request merely raises a "patentability issue that has not been evaluated on its merits." But that is not what the statute says. The question must be "new," and a question previously considered and dismissed by the Office does not satisfy that standard.[1]

Nor can the Director square its interpretation of the statute with the legislative concerns that motivated its passage. The Director acknowledges that the "the SNQ standard serves to prevent potential patentee harassment." Director Br. 29. As explained in Vivint's opening brief and above, this case presents a particularly egregious example of patentee harassment: Alarm.com used the reexamination

---

[1] The Director disputes "Vivint's implication that a patent owner 'overcomes' a patentability issue when the Board declines to even review the issue based on discretionary grounds in an IPR institution decision." Director Br. 29. But the Director does not explain the reason for its disagreement, nor is any reason readily apparent. Any patentee who convinces the PTAB to deny institution of an IPR filed against its patent—for whatever reason—would reasonably view itself as having "overcome" the challenger's arguments.

process to do an end-run around § 315(b)'s one-year time bar and obtain a *fourth* attempt to invalidate the '513 patent. Op. Br. 6–13, 24–25.

### 2.     The MPEP supports Vivint's position, not the Director's.

In any event, § 2242 of the MPEP in fact shows that the reexamination request here did not present a substantial new question of patentability.

As explained in Vivint's opening brief, the MPEP specifies that a question is not "new" if it has been previously decided in

> (A) the original examination of the application which matured into the patent; (B) the examination of the patent in a reissue application that has resulted in a reissue of the patent; (C) the examination of the patent in an earlier concluded reexamination or supplemental examination; (D) the review of the patent in an earlier concluded trial by the Patent Trial and Appeal Board, such as a post-grant review, inter partes review, or covered business method review of the patent; or (E) *any other contested Office proceeding which has been concluded and which involved the patent*.

MPEP § 2242(I) (emphasis added); *see* Op. Br. 22–26. The '1091 IPR was a "contested Office proceeding" involving the patent, and the Board there rejected the precise arguments Alarm.com raised in the reexamination request. A straightforward application of § 2242 thus shows that the reexamination request did not present a substantial new question of patentability. Op. Br. 25–26.

The Director offers two responses, but neither has merit.

*First*, the Director argues that Vivint's focus on the "other contested Office proceeding" language "ignore[s] the provision specific to the IPR that forms the

basis for Vivint's argument." Director Br. 27. This is, in effect, a form of a specific-governs-the-general argument: because item (D) of the MPEP's list specifically governs IPRs (says the Director), item (E) of the list does not apply here.

But the Director's premise is wrong: item (D) of the list is not specific to IPRs. It covers any review of the patent by the PTAB that has occurred at the trial stage. And an IPR is listed as only one example of such a review. There is thus no warrant for the Director's assertion that item (D) is any more "specific" to IPRs than is item (E). One could equally contend that item (D) is specific to trial-stage determinations, while item (E) covers findings made at other stages of Office proceedings. *See Maracich v. Spears*, 570 U.S. 48, 66 (2013) (rejecting party's reliance on the specific-governs-the-general canon because "[a]s between the two exceptions at issue . . . it is not clear that one is always more specific than the other").

*Second*, the Director asserts that the '1091 IPR did not "decide[]" the patentability issue in Vivint's favor because the PTAB did not address the merits. Director Br. 27–28. This argument fails as well. The PTAB did not address the merits because it found that Alarm.com was not entitled to raise the argument *at all* in light of its conduct in the earlier IPRs. That may not be a decision on the merits, but it is decidedly a decision on the patentability issue that went in Vivint's favor: the PTAB ruled that Vivint did not even have to respond to the argument. Under the plain

language of the MPEP, that is sufficient to preclude a finding of a substantial new question of patentability.

## II. The Office's maintenance of this reexamination proceeding notwithstanding § 325(d) was arbitrary and capricious.

### A. The Director's attempts to insulate this issue from judicial review lack merit.

The Director first attempts to avoid review of this issue entirely by arguing that the Office's determination to maintain this proceeding in the face of § 325 is unreviewable because it is an action "committed to agency discretion by law" (quoting 5 U.S.C. § 701(a)(2)). Director Br. 31. The Director is wrong.

1.     Courts apply a "'strong presumption' favoring judicial review of administrative action." *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 486 (2015) (quoting *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986)); *accord Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018). Section 701(a)(2) of the APA sets forth a "very narrow exception" to this rule that "applies in 'those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply.'" *McCarthy v. Merit Sys. Prot. Bd.*, 809 F.3d 1365, 1370–71 (Fed. Cir. 2016) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971)). "To give effect to § 706(2)(A)"—which permits courts to review agency action for "abuse of discretion"—"and to honor the presumption of review," the Supreme Court has "read the exception in § 701(a)(2)

8

quite narrowly, restricting it to 'those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Weyerhauser*, 139 S. Ct. at 370 (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)); *accord Alaniz v. Office of Pers. Mgmt.*, 728 F.2d 1460, 1463 (Fed. Cir. 1984). Notably, a statute's use of "a permissive term such as 'may' rather than a mandatory term such as 'shall' . . . . does not mean the matter is committed exclusively to agency discretion." *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1401 (D.C. Cir. 1995); *contra* Director Br. 32 (incorrectly suggesting that statute's use of word "may" renders the agency's exercise of discretion unreviewable).

Additionally, even where an "agency's discretion is unfettered at the outset," courts may still review a given exercise of discretion to ensure that the agency has not made "an irrational departure" from its prior practices. *INS v. Yang*, 519 U.S. 26, 32 (1996); *see also Spencer Enters., Inc. v. United States*, 345 F.3d 683, 688 (9th Cir. 2003) ("Even where statutory language grants an agency 'unfettered discretion,' its decision may nonetheless be reviewed if regulations or agency practice provide a meaningful standard by which this court may review its exercise of discretion."). That is, even when it comes to matters of discretion, "[a]gencies are under an obligation to follow their own regulations, procedures, and precedents, or provide a

rational explanation for their departures." *Distrigas of Mass. Corp. v. F.E.R.C.*, 737 F.2d 1208, 1219 (1st Cir. 1984).

"In determining whether agency decisions are committed to agency discretion by law," courts have also considered various "pragmatic considerations," including "(1) the need for judicial supervision to safeguard the interests of the plaintiffs; (2) the impact of review on the effectiveness of the agency in carrying out its congressionally assigned role; and (3) the appropriateness of the issues raised for judicial review." *Armstrong v. Bush*, 924 F.2d 282, 293 (D.C. Cir. 1991).

**2.**     Application of these principles here demonstrates that the Office's refusal to terminate the reexamination request under § 325(d) is reviewable.

Vivint's argument under § 325(d) is simple: Given that the Board denied institution of the '1091 petition based on § 325(d) (among other considerations), Alarm.com's virtually identical reexamination request should have been denied based on § 325(d) as well. The agency's decision to apply the same statute to the same factual scenario but yet arrive at a different result was arbitrary and capricious and an abuse of discretion under 5 U.S.C. § 706(2)(A). Op. Br. 29. This Court has jurisdiction to review that argument.

It is no doubt true that application of § 325(d) in the first instance is discretionary. *Cf.* Director Br. 31. But Supreme Court law is clear that, where an agency's exercise of discretion constitutes an "irrational departure" from prior

10

practice, judicial review is available. *Yang*, 519 U.S. at 32; *see* Director Br. 33 (conceding this point). That is what occurred here.

The three factors identified in *Armstrong* likewise suggest that review of this issue is appropriate. This case is not an isolated incident: the Office routinely permits patent challengers to abuse the reexamination process by filing a copycat reexamination request following an unsuccessful IPR petition. Op. Br. 28, 42–43, 53–56. The Director does not even acknowledge this point, let alone respond to it. There is thus a substantial "need for judicial supervision to safeguard the interests" of patentees and ensure that the PTO properly "carr[ies] out its congressionally assigned role." *Armstrong*, 924 F.2d at 293. And determining whether agency action constitutes an irrational departure from past practice is precisely the sort of issue that courts routinely and appropriately resolve. *See id.*

In arguing to the contrary, the Director cites 35 U.S.C. § 314(a), which provides that "[t]he determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable." *See* Director Br. 32. This provision, however, supports Vivint's argument, not the Director's. Section 314(a) shows that, when Congress wished to preclude judicial review of a certain class of Board determinations, it did so expressly. *See United States v. Smith*, 499 U.S. 160, 173 (1991). That Congress did not establish the same express bar on appeals of

11

determinations made under § 325(d) demonstrates that it did not intend to preclude review of this issue.

In short, the Director has not come close to rebutting the strong presumption in favor of judicial review.

## B.  The Office's refusal to terminate the reexamination was arbitrary and capricious.

### 1.  The Director concedes that two of the primary bases for OPLA's refusal to terminate were legally erroneous.

Tellingly, the Director does not even attempt to defend two of the primary reasons that OPLA provided for refusing to terminate the reexamination.

**a.**  The principal basis for OPLA's refusal was its conclusion that the Office has no discretion to terminate a reexamination proceeding after reexamination has already been ordered. OPLA repeated this point no fewer that *eleven separate times* across the two decisions denying Vivint's requests for termination.[2] As the

---

[2] *See* Appx10846 (Office lacks "discretion to terminate an ongoing reexamination proceeding on the basis set forth in 35 U.S.C. [§] 325(d) if no petition requesting such relief is filed until *after* reexamination has been ordered"); Appx10856 (same); Appx12210 (same); Appx12211 (same); Appx10847 ("35 U.S.C. [§] 305 *requires* the Office to conduct reexamination *once the order has been issued*"); Appx12211 (same); Appx10847 (stating twice that "once an order granting reexamination has issued, the Office no longer has discretion under 35 U.S.C. [§] 325(d)"); Appx12211 (stating—incorrectly—that Vivint did "not dispute that the Office is required by 35 U.S.C. [§] 305 to conduct reexamination once the order has been issued pursuant to 35 U.S.C. [§] 304"); Appx12213 (same); Appx12217 (same, and adding that "[t]he Office cannot waive a statutory requirement").

12

Director concedes (relying on the very case Vivint cited in its opening brief), that is flatly wrong: the Office had inherent authority to "revisit" its decision to grant the reexamination request. Director Br. 33–34 (citing *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1360 (Fed. Cir. 2008)).

The heading of the section of the Director's brief that contains this concession—"Vivint's Argument That the USPTO Had Inherent Authority to Terminate the Reexamination Goes Nowhere," Director Br. 33—is puzzling. As the body of the Director's brief admits, Vivint's argument decidedly goes somewhere: it shows that OPLA's *primary reason* for refusing to terminate the reexamination proceeding was legally erroneous.

The Director does make a half-hearted attempt to defend OPLA's assertion that Vivint should have avoided this (non-existent) problem by *violating Office rules* and raising the § 325(d) in a pre-grant filing. Director Br. 35. But—even assuming that Vivint could have requested "that the Office waive the rules and accept a pre-examination filing," Director Br. 35—the Director does not cite any authority suggesting that Vivint was required to request such a waiver on pain of forfeiting its § 325(d) argument. That is because no such authority exists. An agency cannot lawfully penalize a party for following the agency's own rules.

To this point, the Director responds that Vivint was not actually "penalized" because CRU supposedly considered § 325(d) in determining whether to grant to

13

reexamination request. Director Br. 35. This assertion lacks any basis in the record. The CRU decision granting reexamination does not even mention § 325(d), nor does it acknowledge that the Board denied the '1091 IPR petition under that very subsection. *See* Appx977–985.

**b.**    Nor does the Director defend OPLA's assertion that the APA's prohibition against arbitrary and capricious action does not apply to reexamination orders because they are not "a final agency action." Appx10848 n.4; Appx12213. The assertion is indefensible. As explained in Vivint's opening brief, a non-final agency action is not *immediately reviewable*, but it is decidedly subject to the strictures of APA. Op. Br. 38–39; *see Automated Merchandising Sys., Inc. v. Lee*, 782 F.3d 1376, 1381 (Fed. Cir. 2015) ("'intermediate' agency action" is reviewable "on the review of the final agency action") (quoting 5 U.S.C. § 704).

### 2.    The Board relied on § 325(d) to deny institution of the '1091 IPR, and the Director's attempt to re-write the Board's decision to show otherwise lacks merit.

The Director's contention that OPLA's refusal to terminate the reexamination was not inconsistent with the '1091 Decision because the Board "did not decide" the § 325(d) issue in the '1091 IPR, Director Br. 11, 36, simply cannot be squared with the '1091 Decision. The Board spent multiple paragraphs addressing Vivint's argument that the '1091 IPR petition "present[ed] the same or substantially the same art or arguments as those previously presented to the Office" and *agreed with Vivint*

14

that this factor weighed in favor of denying institution. '1091 Decision at 11–14 (citing 35 U.S.C. § 325(d)).

Specifically, the Board explained that, "in making the determination whether [Alarm.com]'s current challenges present[ed] the same or substantially the same art or arguments as those previously presented to the Office, [the Board] may consider whether [Alarm.com] use[d] information gleaned from [the Board's] earlier decisions to bolster challenges it advanced unsuccessfully." *Id.* at 11–12. It was undisputed that "this [wa]s the case" in the '1091 IPR. *Id.* at 12. The '1091 IPR was "a case of undesirable, incremental petitioning, in which a petitioner relies on a patent owner's contentions and/or a Board decision in an earlier proceeding or proceedings involving the same parties, the same patent, and the same claims to mount another challenge after an earlier, unsuccessful or only partially successful challenge, by fixing deficiencies, noted by the Board, that were within the petitioner's capacity to avoid in the earlier petition or petitions." *Id.*

The Director acknowledges that the Board "identified the language of § 325(d) as an eighth factor" in its analysis of whether to institute the '1091 petition. Director Br. 39. But the Director argues that this does not matter because the Board's analysis was merely "couched in terms of § 325(d)" but actually relied on "IPR-specific considerations regarding 'follow-on petitioning' that animate the § 314-

specific factors." *Id.* at 40. In other words, the Director maintains that, while the Board *said* it was applying § 325(d), the Board was actually applying § 314.

The Director's analysis does not withstand scrutiny. Section 325(d) empowers the Board to consider whether "the same or substantially the same prior art or arguments have been previously presented to the Office." As the Board recognized, that statutory language is amply broad enough to encompass the consideration of whether a follow-on petition has attempted to "use[] information gleaned from [the Board's] earlier decisions to bolster challenges it advanced unsuccessfully." '1091 Decision at 11–12. Concerns regarding "follow-on" petitioning, Director Br. 39, can be relevant to the § 325(d) analysis just like they can be relevant to the § 314 analysis. In the '1091 Decision, the Board properly assessed these concerns and determined that denial of institution was appropriate under § 325(d). *See* '1091 Decision at 11–14.

The Director states that the '1091 Decision "intimates the art and arguments raised by the '1091 IPR are *different* from those previously presented to the Office." Director Br. 41. That is not entirely accurate. Alarm.com's '1091 petition used somewhat different art than its previous two (unsuccessful) IPR petitions in an effort to "bolster" its arguments, but the unpatentability arguments were still "substantially the same." '1091 Decision at 11–12. That is why the Board found denial of the '1091 petition appropriate under § 325(d). *See id.* Moreover, as explained in Vivint's

opening brief, many of the other factors discussed by the Board "had significant overlap with the § 325(d) inquiry." Op. Br. 36–37. The Director provides no substantive response to this point.

In short, it is the Director—not Vivint—that is attempting to "rewrite[] the Board's institution denial," Director Br. 37. The Board denied institution of the '1091 IPR under § 325(d).

### 3. Because the reexamination request simply copied the '1091 IPR petition, the Office acted arbitrarily and capriciously in treating the two filings differently under § 325(d).

The Director admits that § 325(d) is "applicable to both AIA proceedings, as well as proceedings under chapter 30, which includes ex parte reexamination." Director Br. 7. And it is a settled principle of administrative law that "agency action is arbitrary when the agency offer[s] insufficient reasons for treating similar situations differently." *Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996). That should be the end of this analysis. Alarm.com's reexamination request was not just "substantially the same" as the '1091 petition—it was almost *exactly the same*. Accordingly, because the '1091 petition was denied under § 325(d), the nearly identical reexamination request should have met the same fate. The Office's decision to treat the two filings differently was arbitrary and capricious.

None of the Director's responses to this point has merit.

17

*First*, the Director appears to endorse OPLA's reasoning that the Shetty-Joao-Garton combination had not been previously analyzed on the merits by the Board. Director Br. 19, 41–42. But that is irrelevant under § 325(d), which asks only whether "the same or substantially the same prior art or arguments previously were *presented to* the Office." 35 U.S.C. § 325(d) (emphasis added). Section § 325(d) does not require that the arguments have been *decided* by the Office *on the merits*.

*Second*, the Director argues that Vivint seeks to convert § 325(d) into a "mandatory estoppel." Director Br. 21, 43. That is a straw man. Vivint is not arguing that § 325(d) requires the Office to refuse a reexamination request if the same or substantially the same prior art or arguments have previously been presented to the Office. Vivint is arguing that, if the Office chooses to exercise its discretion to reject a certain set of arguments under § 325(d) when made in an IPR, it cannot then perform an about-face and permit the same arguments (made by the same challenger, no less) in a later reexamination. That is the epitome of arbitrary and capricious action. And it is exactly what Congress was trying to prevent when it made § 325(d) applicable to reexaminations. *See* 157 Cong. Rec. S1376 (Mar. 8, 2011) (statement of Sen. Kyl) (application of § 325(d) in reexaminations "will prevent parties from mounting attacks on patents that raise issues that are substantially the same as issues that were already before the Office with respect to the patent"); *see also* Op. Br. 30–31.

*Third*, the Director argues that "[d]ifferences in the IPR and ex parte reexamination statute permit different applications of the discretionary provision [of] § 325(d)." Director Br. 42–46. But the Director does not precisely articulate what those "differences" are or why they affect the § 325(d) analysis; instead, the Director simply parrots OPLA's conclusion that the two different categories of proceedings have "different dynamics." *Id.* at 43–45. Vivint's opening brief showed that none of the purported differences identified by OPLA justify applying § 325(d) any differently in reexaminations than it is applied in IPRs. Op. Br. 39–42.

The differences the Director does purport to identify are either factually incorrect or plainly irrelevant to the § 325(d) inquiry. The Director says, for example that ex parte reexamination is designed to serve the "public-interest-driven" purpose of allowing the Office to reexamine a prior grant of a patent on the basis of prior art that was not previously fully considered, whereas "AIA proceedings are adversarial." Director Br. 44–45. This purported distinction cannot be reconciled with the Supreme Court's decision in *Oil States*, which held that, "like the PTO's initial review, the Board's inter partes review protects 'the public's paramount interest in seeing that patent monopolies are kept within their legitimate scope,'" and thus "involves the same interests as the determination to grant a patent in the first instance." *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct.

1365, 1374 (2018) (quoting *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144 (2016)).

The Director also says that "the burden to the patent owner of ex parte reexamination is less than an IPR," Director Br. 45—the implication apparently being that § 325(d) is less important in ex parte reexaminations because they present less of an opportunity for "patent owner harassment." Both the premise and the conclusion here are wrong. As to the premise, this very case shows that ex parte reexaminations can present an even greater burden on patentees than IPRs, since patent challengers can use the reexamination process to resurrect failed IPR arguments long after the § 315(b) bar date. And, as to the conclusion, the judgment regarding the relative importance of § 325(d) in the two types of proceedings has already been made by Congress. Congress expressly chose to make § 325(d) applicable to *both* reexaminations *and* IPRs. Had Congress wanted two different standards to apply in the two different types of proceedings, it could easily have said so—but it did not. The Director does not and cannot identify anything in the text of § 325(d) that supports the differential treatment the Director urges here. Op. Br. 39.

## III. The maintenance of this proceeding violated the Appointments Clause and the Administrative Procedure Act.

Even setting aside the merits, this proceeding suffered from fatal constitutional and statutory infirmities.

20

The appointment scheme for APJs is unconstitutional under the Appointments Clause. This Court correctly so found in *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019), but the court's crafted remedy did not fix the constitutional problem and is inconsistent with congressional intent in any event. Op. Br. 43–45. Vivint maintains this argument to preserve it for further review in light of the Supreme Court's review of the *Arthrex* decision.

Moreover, even if the *Arthrex* remedy fixed the constitutional problem, it created a statutory one in its place: it rendered APJs unable to lawfully preside over inter partes reviews. Op. Br. 45–52.

The Director's response to these arguments is twofold. *First*, the Director contends that Vivint forfeited the arguments by raising them for the first time in this Court. But that contention is refuted by *Arthrex* itself. *Second*, the Director says that the arguments are foreclosed by *Arthrex*. That is (obviously) true with respect to Vivint's argument that *Arthrex* was wrongly decided, but it is not true with respect to Vivint's APA argument. And, in any event, if the Court is not inclined to vacate the decision below for the reasons explained *supra* Sections I and II, it should hold this case pending the Supreme Court's resolution of *Arthrex* and then resolve Vivint's constitutional and statutory arguments with the benefit of the Supreme Court's decision.

21

**A.    This Court's decision in *Arthrex* directly refutes the Director's forfeiture argument.**

The Director's contention that Vivint should have raised its constitutional and APA arguments to the Board is inconsistent with *Arthrex* itself. As Vivint's opening brief explains, *Arthrex* found the appellant's Appointments Clause challenge

> timely because it had been "raised before the first body capable of providing it with the relief sought"—i.e., this Court. 941 F.3d at 1320. Raising the argument to the Board, the Court reasoned, would "have been futile" because "[t]he only possibility of correction" would have been "the Director shutting down" the entire inter partes review regime. *Id.* Just so here: Vivint's contention is that the Board as currently constituted cannot lawfully decide ex parte reexaminations consistent with the Appointments Clause and the Administrative Procedure Act. There is nothing . . . the Board could have done to remedy the alleged defects had they been raised below. Accordingly, these arguments have been timely raised.

Op. Br. 52 n.16.

The Director responds that *Arthrex* found no forfeiture only because "the Appointments Clause issue was one of first impression" and that "*Arthrex* did not issue an omnibus waiver excusing future parties' forfeiture." Director Br. 48. In fact, *Arthrex* explicitly held that the Court would consider Appointments Clause challenges raised for the first time on appeal. 941 F.3d at 1340. And the Court has done just that: it has consistently addressed such challenges when raised in the appellant's first appellate submission. It has *not* required that the appellant have raised the issue to the Board. *See Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d

760, 764 (Fed. Cir. 2020) (Moore, J., concurring). The Director's forfeiture arguments thus lack merit.

## B.    Vivint's APA argument is not foreclosed by *Arthrex*.

Vivint acknowledges, of course, that its argument that *Arthrex* was wrongly decided is (by definition) foreclosed by *Arthrex*. *Cf.* Director Br. 48–49.[3]

But the same is not true of Vivint's APA argument. This separate argument is a statutory one: it does not depend on whether *Arthrex* was correctly decided. The argument proceeds in two steps. *First*, because IPRs are formal adjudications, they must be heard by (i) the agency, (ii) members of the body comprising the agency, or (iii) "administrative law judges appointed under [5 U.S.C. §] 3105," 5 U.S.C.

---

[3] The Director also relies on this Court's decision in *Caterpillar Paving Products Inc. v. Wirtgen America, Inc.*, 957 F.3d 1342 (Fed. Cir. 2020), which held that post-*Arthrex* Board decisions are not subject to challenge on Appointments Clause grounds because "the Board judges were constitutionally appointed as of the date that this court issued its decision in *Arthrex*." *Id.* at 1343; *see* Director Br. 49. It is of course true that, if the Supreme Court affirms *Arthrex* in its entirety, the combination of *Arthrex* and *Caterpillar* will foreclose Vivint's Appointments Clause argument in this case. Vivint observes, however, that, if the Supreme Court affirms *Arthrex*'s holding of a constitutional violation but concludes that a *different* remedy is required, that decision would abrogate *Caterpillar*'s holding that *Arthrex* prospectively cured any constitutional violation. In that case, Vivint would be entitled to relief because the Board decision here would have issued prior to the Supreme Court's imposition of the constitutionally appropriate remedy. *See BioDelivery Sciences Int'l, Inc. v. Aquestive Therapeutics, Inc.*, 898 F.3d 1205, 1208 (Fed. Cir. 2018) (permitting parties to newly raise arguments against partial institution of IPRs following the Supreme Court's holding in *SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348 (2018), that the PTAB's partial-institution practice was unlawful).

§ 556(b). *Second*, APJs are not the PTO or members comprising the PTO, and, because *Arthrex* held that APJs no longer enjoy any removal protections, they cannot qualify as ALJs either. *Cf.* Director Br. 50 (agreeing that APJs do not qualify as ALJs). It follows that APJs may no longer lawfully preside over IPRs. Op. Br. 45–52. The *Arthrex* panel did not address this argument, and *Arthrex* therefore does not foreclose it.

To be sure, *Arthrex* held that (prior to the implementation of the Court's severance remedy) APJs were statutorily subject to the removal protections of 5 U.S.C. § 7513. This conclusion—which Vivint disputes—would imply that they were *not* "administrative law judges appointed under section 3105." *Arthrex*, 941 F.3d at 1333 n.4. But, even if this conclusion is correct, all it shows is that APJs were incapable of lawfully deciding formal adjudications like IPRs even *before Arthrex* was decided. It does *not* show that Vivint's APA argument is wrong or foreclosed.

In short, neither *Arthrex* nor any other case of this Court addresses the implications of the *Arthrex* decision for the APA's requirement that formal adjudications be adjudicated by the agency itself or by one or more ALJs. And the Director does not respond to Vivint's APA argument on the merits, instead just stating (incorrectly) that it was already rejected in *Arthrex*, Director Br. 50. Having failed to explain how APJs are allowed under the APA to adjudicate inter partes

reviews, any argument by the Director on this score is abandoned. *See Customedia Techs., LLC v. Dish Network Corp.*, 941 F.3d 1174, 1175 (Fed. Cir. 2019).

### C.     If the Court does not vacate this reexamination proceeding, it should hold this case pending the Supreme Court's resolution of *Arthrex*.

For the reasons explained in Vivint's opening brief and in Sections I and II above, this reexamination should never have been allowed to proceed in the first instance. The Court should thus vacate the decision below and remand with instructions to terminate the reexamination, and it need not reach Vivint's constitutional and APA arguments.

If the Court is not presently inclined to vacate this reexamination proceeding, however, it should hold this case pending the Supreme Court's review of the *Arthrex* case and then address Vivint's constitutional and APA arguments with the benefit of the Supreme Court's guidance. *See* Director Br. 51 (agreeing that the Court "should defer" resolution of the constitutional and APA arguments pending the resolution of *Arthrex*).

## CONCLUSION

This Court should vacate the Board's decision and remand with instructions to terminate the reexamination.

Dated: March 15, 2021

Respectfully submitted,

 /s/ *Robert Greene Sterne*
Robert Greene Sterne
Jason D. Eisenberg
William H. Milliken
**Sterne Kessler Goldstein & Fox PLLC**
1100 New York Ave., N.W.
Washington, DC 20005
202.371.2600

*Counsel for Appellant Vivint, Inc.*

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:**  20-1992

**Short Case Caption:**  In re: Vivint, Inc.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes _6,065_ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: _03/15/2021_          Signature:  /s/ Robert Greene Sterne

                          Name:  Robert Greene Sterne